## Eby Byers *vs.* Franklin Coal Company of Lykens Valley & others.

A mining corporation is not a manufacturing corporation within the St. of 1862, c. 218, defining and regulating the enforcement of the liabilities of officers and stockholders of manufacturing corporations.

The personal liability imposed by the St. of 1863, c. 246, § 2, upon the officers of any corporation organized under the Gen. Sts. c. 61, for its debts contracted during their neglect to perform duties required by the St. of 1862, c. 210, may be enforced, in the case of a mining corporation, by a suit in equity under the Gen. Sts. c. 68, § 17.

The obligation of a corporation, either as drawer of a bill of exchange, or under an express agreement in relation to a bill of exchange drawn for its benefit by a third person, to indemnify an accommodation acceptor for his payment of the bill, is a debt contracted by the corporation at the time of the acceptance, within the meaning of the St. of 1863, c. 246, § 2.

A judgment against a corporation upon a simple contract debt for which its officers are personally liable under the St. of 1863, c. 246, § 2, does not merge the debt so as to extinguish their liability.

A suit in equity under the Gen. Sts. c. 68, § 17, to enforce the personal liability of officers of a corporation for a debt contracted by it to the plaintiff upon a draft accepted and paid by him for its accommodation, was referred to a commissioner to take and report all evidence which the parties might choose to introduce, subject to the opinion of the court as to its relevancy or competency. Evidence was taken and reported, under this reference, as to two such drafts, and a full hearing was then had before the court as to both drafts, and a decree ordered for the plaintiff, without objection made that the pleadings applied to one draft only. Before the entry of the final decree, the plaintiff moved for leave to amend the bill so as to include both drafts, and the defendants objected. *Held*, that the amendment should be allowed.

Bill in equity, filed September 5, 1867, by Eby Byers in behalf of himself and all other creditors of the Franklin Coal Company of Lykens Valley, a corporation organized and established

in Boston under the Gen. Sts. *c.* 61, against said corporation and Edward C. Bates, Josiah Caldwell, Charles H. H. Cook, George S. Hillard, George C. Lord, Theodore Matchett, Jacob Sleeper and Joseph M. Wightman, to charge the individual defendants, Bates as president, Cook as treasurer, and the others, with Bates, as directors, of the corporation, chosen at the annual meeting, June 20, 1865, and holding said offices from that time till on or about June 26, 1866, with personal liability for a debt of the corporation to the defendant, by reason of their neglect to sign and swear to and deposit with the city clerk of Boston, within thirty days after the date of said meeting, the certificate of the financial condition of the corporation required by the St. of 1862, *c.* 210.

The debt alleged was the amount of a judgment for $5705.40 damages, and $21.71 costs, obtained by the plaintiff at April term 1867 of the superior court in Suffolk, in an action brought by him against the corporation " upon a draft of said corporation payable in six months from its date, which date was April 3, 1866, for the sum of $5500, which draft this plaintiff had indorsed for the benefit and accommodation of said corporation, and which draft this plaintiff was compelled to pay and did pay ; " and the bill alleged the recovery of the judgment, the neglect of the corporation for thirty days after demand to pay or exhibit property to satisfy the execution issued thereon, and the return of the execution unsatisfied, before the filing of the bill ; and, as grounds on which it was expected to charge the individual defendants personally, set forth their neglect to file the certificate, as above mentioned, and referred to the St. of 1863, *c.* 246, § 2.

The bill was taken for confessed against the corporation. Bates and Cook appeared, but declined to file answers. The other individual defendants answered, alleging, among other things, that the corporation was not a manufacturing corporation. Lord and Sleeper also denied that they ever were directors or officers of the corporation ; and the bill was subsequently dismissed as to them. The plaintiff filed a general replication, and the case was referred by *Morton*, J., on September 25, 1869, to a " special commissioner, to take and report all evidence the parties may choose to introduce, subject to the opinion of the court as to the relevancy or competency of the same."

Under this reference, evidence was taken by the commissioner concerning debts of the corporation to various creditors, and, among them, concerning two drafts, each for $5500, payable respectively in five months and six months, and accepted and paid by the plaintiff, and two judgments recovered respectively thereon by him against the corporation, in the superior court in Suffolk at April term 1867, the first of said drafts being in the following words and figures, and the second in the same, except as to the time of payment:

"Boston, April 3, 1866.   To Eby Byers, Harrisburg, Penn. $5500.   Five months after date, pay to the order of Charles H. H. Cook, Treasurer, fifty-five hundred dollars, value received, and charge the same to the account of, as advised,

"Charles H. H. Cook, Treasurer Franklin Coal Co. of L. V."

The evidence showed that the plaintiff accepted these drafts in compliance with the written request of the president of the corporation for a temporary loan of the plaintiff's credit for its accommodation, and under an agreement with the corporation, which was not fulfilled, to furnish him with a quantity of coal equal in value to the amount of the drafts, before their maturity.

Upon the return of the commissioner's report, the case was reserved by *Wells*, J., upon the pleadings and the report, for the consideration of the full court, "such judgment or order to be entered therein as upon their determination of the questions raised thereon shall be found to be necessary or proper," and under this reservation was argued in November 1869.   The substance of the evidence, the provisions of the statutes, and all the other material facts, are given in the opinion.

*H. G. Parker & T. Weston, Jr.*, for the plaintiff.

*C. W. Huntington*, for Caldwell.

*C. F. Choate*, for Sleeper.

*C. A. Welch*, (*E. D. Sohier* with him,) for Wightman and Matchett.

*H. W. Paine*, for Hillard.

MORTON, J.   This is a bill in equity against the Franklin Coal Company of Lykens Valley, and certain persons alleged to be officers of said company.   It appears that the defendant corpora-

tion was duly organized in 1863, under the provisions of the sixty-first chapter of the General Statutes, for the purpose of mining coal in the state of Pennsylvania; that the defendants Bates, Wightman, Hillard, Caldwell, Matchett and Cook were elected officers of said corporation on the 20th day of June 1865, and continued in office until the 19th day of June 1866; that they neglected to file the annual certificate required by the St. of 1862, *c.* 210; that a certificate in due form was filed June 19, 1866; that in May 1867 the plaintiff recovered two judgments against the corporation; that the executions which issued thereon were placed in the hands of an officer, who made a demand upon the corporation; and that the corporation neglected for thirty days after demand to pay the amount of the judgments, or to exhibit property sufficient to satisfy the executions, which were thereupon returned unsatisfied. It is obvious that the plaintiff brought this suit under the provisions of the St. of 1862, *c.* 218; his bill is in behalf of himself and all other creditors of the corporation; and all the proceedings are such as are required by that statute, in order to enforce a liability against officers.

The first question which arises is, whether that statute applies to corporations of this character. The Franklin Coal Company was not a manufacturing corporation. It was organized for the purpose of mining coal in Pennsylvania, and the evidence shows that to have been its sole business. It was a mining corporation, and not a corporation for manufacturing purposes.

The St. of 1862, *c.* 218, does not apply to such corporations. Its title is, "An act to define and regulate the enforcement of the liabilities of officers and stockholders of manufacturing corpora·· tions." It provides, in the first section, that "the officers of manufacturing corporations" shall be liable for the causes and in the manner therein specified; and all the subsequent provisions are applicable only to "such" corporations.

If we look at the history of the legislation in this Commonwealth upon the subject of corporations, we find that a distinction is constantly maintained in the statutes between manufacturing and other corporations. St. 1829, *c.* 53. Rev. Sts. *c.* 38. St. 1851, *c.* 133. Gen. Sts. *cc.* 60, 61, 68. In view of the uniform

ity with which this distinction is recognized in the statutes, it cannot be presumed that the legislature intended to include other kinds of corporations under the description of "manufacturing corporations" in the St. of 1862. Being in its express terms applicable only to manufacturing corporations, it cannot by construction be extended to include mining corporations.

These considerations dispose of the claims of all the creditors except the plaintiff Byers. As the act of 1862 does not apply to the case, it follows that the bill cannot be maintained for the benefit of the other creditors who are not parties thereto ; and it is not necessary to consider whether they can maintain suits in their own names.

But the plaintiff contends that he can maintain this bill under the Gen. Sts. *c.* 68, § 17, which provides that, when the officers of a corporation are liable for any of its debts, or for their acts or omissions respecting its business, the party entitled may, instead of any remedy otherwise provided, maintain a suit in equity. As the St. of 1862 does not repeal this provision, either expressly or by implication, except so far as relates to manufacturing corporations, it would seem that the appropriate remedy to enforce any liability which attached to these defendants by reason of their failure to file the annual certificate of the condition of the corporation, is by a suit in equity in this court. The bill in this case is framed under the act of 1862, and contains some unnecessary averments ; but such averments may be rejected as surplusage, and the bill may be maintained under Gen. Sts. *c.* 68, § 17, if upon the facts shown the plaintiff is entitled to relief.

By the St. of 1863, *c.* 246, § 2, it is provided that the officers who neglect or refuse to file the certificate required by the St. of 1862, *c.* 210, "shall be jointly and severally liable for all debts of the corporation contracted during the continuance of such violation, refusal or neglect." Under this provision, upon the facts proved and admitted, the defendants are liable for all debts of the corporation contracted between July 20, 1865, and June 19, 1866. Has the plaintiff proved a debt of this character ?

His debt arose as follows: On April 3, 1866, the plaintiff accepted two drafts for the accommodation of the corporation, drawn

by its treasurer, one payable in five months and the other in six months from their date. These drafts were negotiated at or about the time they were accepted, and at or about their maturity were paid by the plaintiff. The question is, whether the debt thus created is a debt contracted at the time when the plaintiff paid the drafts, or at the time when he accepted them.

This is not an open question in this Commonwealth.. The plaintiff was an accommodation acceptor, and the relation between the corporation and him was that of principal and surety In *Rice* v. *Southgate,* 16 Gray, 142, it was decided that the liability of a principal to indemnify his surety, for any payment the latter may be compelled to make for the former, takes effect from the time when the surety becomes responsible for the debt of his principal, and that, upon payment by the surety, his debt is "a debt contracted" at the time he became responsible, and not at the time of such payment. This is decisive of the case at bar; and it follows, that the original debt of the plaintiff was a debt contracted at the time he accepted the drafts, and therefore one for which the defendants were liable.

But the defendants contend, that, if this be so, yet the judgments against the corporation, obtained by the plaintiff, merged and extinguished the debt, and thus relieved them from their liability. It is true that in many cases, in this Commonwealth and elsewhere, the rule of law is broadly stated to be, that a simple contract debt is merged and extinguished by a judgment founded on such debt. But this rule is subject to important qualifications. It is not true that in every case, and for all purposes, a simple contract debt is merged and extinguished in a judgment founded upon it. Generally, and perhaps universally, the judgment, so far as the parties to it are concerned, merges the debt; but in cases where there are two or more persons who are severally liable for the debt, a judgment against one does not merge or extinguish the debt as to the other. Thus, in the familiar case of an indorsed promissory note, a judgment against the maker does not merge or extinguish the note as to the indorser. For some purposes such judgment is a merger of the original debt; in any suit or proceeding against the maker, such would be its effect; but it

does not affect the liability of the indorser, and a suit may be maintained against him upon the note. *Gilmore* v. *Carr*, 2 Mass. 171. *Porter* v. *Ingraham*, 10 Mass. 88. *Ward* v. *Johnson*, 13 Mass. 148. The same is true as to the liability of sureties, and of all parties whose liability for the debt is collateral. A judgment against the principal debtor merges the debt as to him, but it does not operate to defeat any collateral, concurrent remedy against other parties, which the creditor may have. *Campbell* v. *Phelps*, 1 Pick. 62.

We are of opinion that the case at bar falls within this principle. The corporation is the principal debtor, primarily liable for the plaintiff's debt ; the liability of the defendants is secondary and collateral. The plaintiff's judgment merges his original debt as to the corporation, and all the necessary consequences of such merger must follow. If he should sue the corporation upon the original debt, it would be a conclusive answer to say that it was merged in the judgment ; but as to the defendants, it does not merge the debt, in the sense that it extinguishes or satisfies it, so as to deprive the plaintiff of the remedy which the statute gives him to enforce their collateral liability.

The view we have taken seems to have been acted o⌐ 'u the legislation and adjudications upon this subject. Thus the St. of 1862, *c.* 218, applicable to manufacturing corporations, provides that the creditor must obtain a judgment against the corporation before he can enforce the collateral liability of officers or stockholders. And in *Cambridge Waterworks* v. *Somerville Dyeing & Bleaching Co.* 4 Allen, 239, this court held that a creditor could not maintain a bill in equity against a stockholder, under the Rev. Sts. *c.* 38, § 31, without first obtaining a judgment against the corporation.

The defendants rely upon the cases of *Handrahan* v. *Cheshire Iron Works*, 4 Allen, 396, and *Mason* v. *Cheshire Iron Works*, Ib. 398 ; but upon a careful consideration of the facts. of these cases it will be seen that they are not in conflict with the views we have taken. In *Handrahan* v. *Cheshire Iron Works* the facts were these The plaintiff, having a debt against the corporation, for which one Richmond was liable as a stockholder, commenced

a suit thereon against the corporation, but did not summon said Richmond as a stockholder. He obtained judgment against the corporation, and afterwards brought this suit, declaring upon his judgment, and summoned Richmond as a stockholder. At the time when said judgment was rendered, Richmond had ceased to be a stockholder. The question before the court was, whether Richmond could be held in this form of action. It is clear that he could not. The laws in force at the time the creditor's debt was contracted created the liability of the stockholders, and determined the remedy to enforce this liability. The remedy thus provided for the creditor was to bring a suit upon his debt, summoning in the stockholders, and, after obtaining judgment against the corporation, to levy his execution upon the person or property of such stockholders as were summoned, or to bring a bill in equity against such stockholders to enforce his judgment. *Cambridge Waterworks* v. *Somerville Dyeing & Bleaching Co.* 4 Allen, 239. The remedy thus provided was the only remedy open to the creditor. *Erickson* v. *Nesmith,* Ib. 233, and cases cited. Having taken judgment against the corporation, it was impossible for the plaintiff to pursue this remedy. As we have before seen, the judgment, as to the corporation, merged the original debt, so that he could not maintain an action against the corporation ; and the necessary consequence of such merger was to prevent him from pursuing the only remedy which the law provided to enforce the liability of stockholders. He therefore adopted a remedy not provided by law, and it was held that such remedy was not open to him.

The case of *Mason* v. *Cheshire Iron Works* differs only in the fact that in the original suit Richmond was summoned as a stockholder. The result was necessarily the same. The plaintiff pursued the statute remedy in part ; but instead of levying his execution upon the person or property of the stockholder, or bringing a bill in equity, he commenced this suit upon his judgment. In each case, the fatal objection was that the plaintiff was attempting to pursue a remedy not provided or recognized by law.

The case of *Taylor* v. *New England Coal Mining Co.* 4 Allen, 577, is like *Handrahan* v. *Cheshire Iron Works.*

Upon the whole, we are of opinion that the fact that the plaintiff has taken judgment against the corporation does not preclude him from enforcing the liability of the officers for the original debt by a bill in equity. It follows that the plaintiff, having discontinued against the defendants Lord and Sleeper, is entitled to a decree against the other defendants. *Decree accordingly.*

Upon the application of the plaintiff, after this decision, for a final decree in his behalf against the individual defendants, for the amounts of the judgments upon both of the drafts, they objected that the bill included only one of the drafts, and he thereupon moved for leave to amend it so as to include the other. They then objected to the allowance of the amendment; and at the same time asked " that the case be now sent to a master, or otherwise set down for hearing, upon the question of fact whether any debt, and if so, what and to what amount, is due to the plaintiff, which he ought to recover against these defendants; claiming, as reason therefor, that the demand set up in the bill and which was understood to be that claimed as the foundation therefor, and the one upon which the testimony was taken before the commissioner, was the judgment recovered in the superior court, as therein described; whereas, by the decision of this court, said acceptance is held not to be merged in said judgment, as against these defendants; and the defendants claim that they have not yet had, but now ought to have, a trial upon the validity and amount of this demand against them."

" The several questions thus presented " were reserved by *Wells,* J., for the consideration of the full court, " such decree to be entered, or other disposition made of the case, as shall upon hearing thereof be deemed proper." Upon the calling of the case for argument at the present session, the defendants filed a petition for leave to reargue the question of the merger of the original debt in the judgment, and had leave accordingly.

*Paine & Welch,* (*Huntington* with them,) for the defendants.

*Parker & Weston,* for the plaintiff.

MORTON, J. After the former decision in this case, the plaintiff filed a motion for leave to amend his bill, and for a final de-

cree. At the hearing upon this motion, the defendants, by leave of court, have reargued the question whether the judgments obtained by the plaintiff against the corporation operated by way of merger to extinguish the liability of the defendants. After a full and careful consideration of the learned argument of the defendants' counsel upon this point, we are unable to see any reason for doubting the correctness of our former decision. The defendants rely upon the cases of *Handrahan* v. *Cheshire Iron Works*, 4 Allen, 396, *Mason* v. *Cheshire Iron Works*, Ib. 398, and *Taylor* v. *New England Coal Mining Co*. Ib. 577, and contend that the decision in the case at bar cannot be upheld without overruling those cases. We cannot concur in this view.

In the case of *Handrahan* v. *Cheshire Iron Works*, (which the other cases cited followed,) the attempt was to enforce the liability of a stockholder for a debt due by the corporation. The stockholder, who was summoned in, was liable for the original debt due the plaintiff; but the plaintiff had recovered judgment against the corporation, and this suit was necessarily an action of contract upon this judgment. The necessary result of the application of the common law doctrine of merger to the facts was, that the plaintiff could not maintain his action against the stockholder. The only remedy which he had at law, to enforce the collateral liability of stockholders, was defeated by his act of merging in a judgment his debt against the corporation. The statute under which he was proceeding did not give him independent, concurrent remedies against the corporation and the stockholders, but only a single joint remedy against both. He elected to put his debt into a judgment, and thus merge it as to the corporation; and he was held to all the necessary consequences of such merger, one of which was, that it created a new debt, contracted at the time of the judgment, upon which alone he could sue. Speaking in reference to the facts of *Handrahan's* *case*, it is practically correct, if not technically accurate, to say that the judgment merged the debt and extinguished the liability of the stockholders. But it cannot be deemed to be an authority for the proposition that in cases where a creditor has several obligors for the same debt, and independent remedies against each,

the recovery of judgment against one extinguishes the liability of the others. In the case at bar, the law gives the plaintiff concurrent, independent remedies, against the corporation and the officers. He may pursue each independently of the other, and the fact that he has pursued and exhausted his remedy against the corporation does not affect his right to enforce by proper process the collateral liability of the officers. It seems to us that the two cases are quite distinguishable, and that the case relied upon by the defendants does not control or apply to the case at bar.

The other question presented to us is, as to the allowance of the plaintiff's motion to amend. The policy of our laws is very liberal in favor of allowing amendments in form or substance. They are uniformly allowed, where the allowance will promote justice and prevent litigation and delay. We are of opinion that under the circumstances of this case the amendment ought to be allowed. In September 1869 the case was by order of court referred to a special commissioner " to take and report all evidence the parties may choose to introduce, subject to the opinion of the court as to the relevancy or competency of the same." Under this order, the parties took evidence before the commissioner and apparently went into a full investigation as to both drafts held by the plaintiff. Evidence was taken as to the inception and validity of each. Upon the report of the evidence, they had a full hearing before the court upon both drafts ; no objection being made that the pleadings did not cover both. The case has been tried as if the allegations now offered by way of amendment had been contained in the original bill. The allowance of the amendment will prevent useless delay and expense, and will work no injustice to the defendants. If it appears that they have not been fully heard upon the question of the validity of the second draft, the case will be reopened for that purpose. We think therefore that the amendment should be allowed, the question of terms being reserved. *Amendment allowed.*

At April term 1871 the case was again heard by *Wells*, J., under the amended bill ; and a deposition of the plaintiff was put

in evidence, to the effect that he accepted the two drafts within a few days from their date, and before April 10, 1866, by the written request of the president of the corporation, and in accordance with an understanding had with him concerning deliveries of coal to be made before their maturity, as appeared also in the evidence formerly taken by the commissioner.

Neither party desired to offer further evidence; the defendants contended, among other things, that the drafts were drafts of Cook and not of the corporation, and therefore they were not subject to individual liability in relation to them; and this question, with others, was reserved for the decision of the full court, "such judgment or decree to be entered, order made or further direction given as in the opinion of the court the decision which shall be rendered upon all or any of said questions may require or make proper," and was argued in March 1872.

*Parker & Weston*, for the plaintiff.

*Huntington*, for the defendants.

MORTON, J. The defendants have argued only one of the questions presented by the report. They now contend that the drafts accepted by the plaintiff were the drafts of Cook, and not of the Franklin Coal Company of Lykens Valley, and therefore that the officers of the company are not liable. But we are of opinion that, so far as the question of the liability of the defendants, in this suit, is concerned, it is immaterial whether they are to be regarded as the drafts of the corporation or of Cook personally. The evidence conclusively shows that the plaintiff accepted the drafts in question for the accommodation of the corporation, and under a contract that the corporation would indemnify him. The liability of the corporation was created by their contract of indemnity; and is precisely the same, whether the drafts are to be regarded as drawn by Cook or by the corporation. In either event, the relation between the corporation and the plaintiff is that of principal and surety, and the debt of the corporation, for which the officers are made liable by statute, was contracted when by the acceptance of the drafts by the plaintiff the contract of indemnity took effect. *Decree for the plaintiff.*