THOMAS S. HITTINGER vs. INHABITANTS OF WESTFORD.
INHABITANTS OF WESTFORD vs. COUNTY COMMISSIONERS OF MIDDLESEX.
CITY OF CAMBRIDGE vs. SAME.

Middlesex.   March 6. — June 22, 1883.   DEVENS & W. ALLEN, JJ., absent.

A dealer in ice had in a town, other than that in which he resided and had his office, a storehouse, in which the ice which constituted his stock in trade was kept, and from which it was delivered on contracts principally made elsewhere. *Held*, that the building in which the ice was kept was not a "store" within the Gen. Sts. c. 11, § 12, cl. 1; and that the ice was not taxable to him in that town.

The cutting of ice on the surface of a pond, and storing the pieces so cut in a building, is not a "manufacture," so that the machinery employed therein is taxable to the owner, under the Gen. Sts. c. 11, § 12, cl. 2.

COLBURN, J.   The essential facts in each of these cases being similar, and the legal questions raised the same, we have considered them together.   The leading facts are, that Thomas S. Hittinger was an inhabitant of Belmont, where he voted and paid taxes upon his poll and all his personal property.   His business was that of cutting, storing, and selling ice at wholesale, chiefly in large quantities, for export, or for use in this or other States.   He sold only such ice as he cut and stored himself. He neither cut, stored nor sold ice at Belmont.   He owned large ice-houses, near railroads, on the shores of Fresh Pond in the city of Cambridge, and of Forge Pond in Westford, in which he stored the ice cut from said ponds, both being great ponds.   He had a steam-engine, boiler, machinery, and ice tools at his ice-houses in said town and city, which were only used for cutting the ice and storing it in said houses.   He had an office in Boston, where he employed a clerk, at which his books were kept, and where his contracts for the sale of ice were usually made and his business principally transacted.   He had no ice stored in Boston.

No business was usually transacted at Cambridge or Westford, except such as was essential to the cutting, storing, and delivery of the ice, pursuant to orders from the office in Boston. The ice was mostly delivered on to railway cars, but to some extent upon wagons sent by purchasers.   All accounts kept at

these places were sent daily or frequently to be entered upon the books in Boston.

In 1880, the town of Westford assessed a tax upon the ice, steam-engine, boiler, and machinery of Hittinger in that town, which he paid under protest, and brought his action in the Superior Court to recover it back. The court found for the plaintiff, and reported the case for the determination of this court.

In 1882, the town of Westford assessed a tax upon the ice, steam-engine, boiler, and ice tools of Hittinger in that town, and the city of Cambridge assessed a tax upon the ice and machinery of Hittinger in that city. Hittinger applied to the assessors of said town and city, respectively, for an abatement of these taxes, which they refused; and he then complained to the county commissioners of Middlesex, who abated these taxes, and the town and city brought their several petitions to this court for writs of certiorari to the commissioners, praying that their determination be reversed.

No questions are made in either of the cases, except upon the validity of the assessments.

The ice was merchandise and was Hittinger's stock in trade.

The town and city contend that the ice was taxable under the provisions of the Gen. Sts. c. 11, § 12, cl. 1, for the reason that Hittinger occupied stores or shops there.

It cannot with propriety be contended, and is not contended, that the ice was taxable in those places merely on the ground that it was stored there. *Loud* v. *Charlestown*, 103 Mass. 278. *Huckins* v. *Boston*, 4 Cush. 543.

In legislative acts, the natural import of words, according to their common use, when applied to the subject matter of the act, is to be considered as expressing the intention of the Legislature. *Opinion of the Justices*, 7 Mass. 523.

We are of opinion that the natural import and common use in this country of the word " store," when applied to a building, is to designate a place where traffic is carried on in goods, wares or merchandise, and not to designate a storehouse. And we are of opinion that the history of the legislation upon the subject of taxing personal property in places other than those where the owner is an inhabitant, indicates that this was

the sense in which the word "store" was used by the Legislature.

In the Prov. St. of 1753–4 (27 Geo. II.) c. 10, § 8; 3 Prov. Laws (State ed.) 695; it was enacted "that when any merchant, trader, or factor, inhabitant of some one town within this Province, shall traffic, or carry on trade and business, and set up a store in some other town in the Province, the assessors of such town where such trade and business shall be carried on as aforesaid, be and hereby are empowered to rate and assess all such merchants, traders, and factors, their goods and merchandise, for carrying on such trade and exercising their faculty in such towns pursuant to the rules and directions of this act," &c. In the corresponding section of the Prov. St. of 1757–8 (31 Geo. II.) c. 2, § 8; 4 Prov. Laws (State ed.) 17; the language was varied as follows: "When any merchant, trader or factor shall set up a store and traffick, or carry on any trade or business in any town, within this Province, not being an inhabitant of such town, the assessors of such town, where such trade and business shall be carried on as aforesaid," &c. A similar section was contained in the tax acts for many years following.

After the adoption of the Constitution, in the annual tax acts which were passed down to the time of the Revised Statutes, it was customary to introduce the provision for the taxation of the personal property of non-residents with a preamble. We quote from the tax act of 1821, being c. 107 of the acts of that year, as a specimen of one of the preambles, and the provisions generally contained in these tax acts. "And whereas there are many persons within this Commonwealth, engaged in trade, who negotiate much business, and hire or occupy shops, and stores and wharves, or either of them, in towns, districts, or places, other than where they dwell, whose property and ability can be better known to the assessors of the several towns wherein such business is transacted, than to the town, district, or other place, where they may dwell: therefore, be it further enacted, that for such goods, wares, and merchandise, or other stock in trade, including stock employed in manufactories, ships or vessels, as are sold, used or improved in towns, districts or other places, other than where the owners thereof may dwell, such owners shall be respectively taxed therefor, in such towns, districts, or

other places : provided, such person or persons do hire or occupy a shop, store, or wharf in such town, district, or other place, and not where they dwell or have their home."

The provisions of the Rev. Sts. *c.* 7, § 10, *cl.* 1, are as follows: " All goods, wares and merchandise, or any other stock in trade, including stock employed in the business of any of the mechanic arts, in towns within the State, other than where the owners reside, shall be taxed in those towns, if the owners hire or occupy stores, shops or wharves therein, and shall not be taxed where the owners reside."

The provisions of the statutes, so far as they affect the cases at bar, have not since been materially changed, either by the St. of 1839, *c.* 139, or by the General Statutes.

It is obvious from the whole course of legislation, that it has been the purpose, as a rule, to make personal property taxable where the owner is an inhabitant, with certain well-defined exceptions, the important one, so far as questions raised in the cases at bar are affected, being, in effect, that if an inhabitant of one town has goods, wares, merchandise, or other stock in trade, in another town, with which he is engaged in trade or business in such other town, such stock in trade is taxable in such other town, not if it is merely kept there, or traded in there, but only in case the owner occupies a store, in which he carries on a trade or traffic in such stock in trade as he has there.

It may not be easy in all cases to determine whether a person occupies a store, within the meaning of the statute, in the place where he keeps his stock in trade; but we are of opinion, in the cases before us, that, though Hittinger had his stock in trade in Cambridge and Westford, he had no store there within the meaning of the statute; that his traffic in his stock in trade was carried on and intended to be carried on substantially at his office in Boston; and that the ice was not taxable in Cambridge or Westford. The ice-houses were only storehouses, and the comparatively trifling amount of ice which may have been incidentally sold from the ice-houses did not change their character into stores. The mere fact that in some cases the title to the ice may have passed to the purchasers when it was delivered from the ice-houses, though the bargain was made elsewhere, did not convert the ice-houses into stores, in the sense of buildings.

in which trade is carried on. If the word "shop" is used in the statute to designate a place where goods are sold, as well as a place where some mechanic art is practised, it is unimportant, as it can have no broader meaning than we attach to the word "store." See *Huckins* v. *Boston, ubi supra; Loud* v. *Charlestown, ubi supra; Charlestown* v. *County Commissioners*, 109 Mass. 270.

In the case of *Gray* v. *Kettell*, 12 Mass. 160, decided in 1815, upon which the city and town rely, it was admitted that the plaintiff occupied a wharf and stores in Charlestown, in which was deposited a large quantity of merchandise, there kept for sale and exhibited to purchasers. No question was made as to the meaning of the word "store," and the only question considered by the court was whether the property was "sold, used, or improved" in Charlestown, and the court held that, under the facts agreed, it was. Although the court in that case attach more importance to the place of delivery, as determining the place of sale, than is warranted by more recent decisions, we find nothing in that case which necessarily conflicts with the conclusion to which we have arrived in the cases at bar.

The city and town contend that, under the second clause of the Gen. Sts. *c.* 11, § 12, which provides that "all machinery employed in any branch of manufactures, and belonging to a person or corporation, shall be assessed where such machinery is situated or employed," &c., the boilers, steam-engines, machinery and ice tools of Hittinger were taxable in those places. The statute only warrants, in any such case, the taxation of what may properly be designated as machinery; but we have no occasion to consider what can properly be termed machinery, as we are clearly of opinion that Hittinger had no "machinery employed in any branch of manufactures." The cutting of ice produced by the agencies of nature, on the surface of a pond, into pieces of a size convenient for handling, and storing the pieces in a building, cannot in any proper sense be called a manufacture. The material is in no way changed, or adapted to any new or different use; it still remains ice, to be used simply as ice; it is no more a manufacture than putting of the water from the pond into casks for transportation and use would be a manufacture, or the mining of coal, which has been decided not to

be a manufacture. *Byers* v. *Franklin Coal Co.* 106 Mass. 131. It is like the harvesting of hay or grain, or other agricultural crops, and the analogy is so strong and obvious, that " the ice crop," " the ice harvest," and " harvesting ice " are terms in common use.

In the first case, the entry must be

*Judgment for the plaintiff.*

In the other cases,

*Petitions for writs of certiorari dismissed.*

*R. D. Smith & M. M. Weston,* for Hittinger.

*J. N. Marshall,* for Westford.

*J. W. Hammond,* for Cambridge.

