## BOSTON LOAN COMPANY *vs.* CITY OF BOSTON.

Suffolk.   Jan. 11. — June 27, 1884.   DEVENS & HOLMES, JJ., absent.

If a foreign corporation has a place of business in this Commonwealth, where it has personal property, consisting of office furniture and fixtures, and where it keeps personal property pledged to it as collateral security for money lent, which it sells when not redeemed, such place of business is a " shop," and the property so used and pledged is " stock in trade," which is taxable to it, under the Gen. Sts. *c.* 11, § 12, *cl.* 1.

CONTRACT to recover the amount of a tax assessed upon personal property of the plaintiff for the year 1881, and paid under protest.   The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows :

The plaintiff is a corporation established under the laws of Connecticut, with a capital stock of $100,000, divided into shares of $100 each.   Its place of business is in Boston, but it holds its annual meetings in Connecticut, and has an office there, and an officer on whom service can be made in case of suits against it, so as to comply with the laws of that State.

On the first day of May, 1881, it had in its place of business in Boston, namely, a room on Washington Street, hired and occupied by it, office furniture, a safe, fixtures, and other things necessary to carry on its business, to the value of at least $1000. It had also in its Boston place of business personal property pledged to it of considerable value.

The only business of the corporation is lending money on personal property mortgaged or pledged to it, except that from time to time, pursuant to the terms of such pledge or mortgage, it sells the collateral security, consisting of merchandise, watches, diamonds, household furniture, &c., which becomes its property by failure of the owners to redeem the property mortgaged or pledged.   It owns no real estate.

No question is made as to the regularity of the proceedings relating to the assessment of the tax in question, if the corporation is liable to pay a tax. Due notice was given of the tax, which was not paid, whereupon a warrant for its collection was issued in due form, and payment demanded, and payment was made under protest, agreeably to the statute.

If the plaintiff was entitled to recover, judgment was to be rendered in its favor for the sum of $362.93, and interest from April 20, 1882, the date of payment; otherwise, judgment for the defendant.

*N. B. Bryant*, for the plaintiff.

*T. M. Babson*, for the defendant.

W. ALLEN, J.   The only ground upon which it is contended that this tax upon a foreign corporation for personal property belonging to it found in this State can be sustained is, that it comes within the provision of the Gen. Sts. *c.* 11, § 12 (Pub. Sts. *c.* 11, § 20), that " all goods, wares, merchandise, and other stock in trade, (except ships or vessels owned by a copartnership,) including stock employed in the business of manufacturing, or of the mechanic arts, in cities or towns within the State, other than where the owners reside, whether such owners reside within or without this State, shall be taxed in those places where the owners hire or occupy manufactories, stores, shops, or wharves, whether such property is within said places or elsewhere on the first day of May of the year when the tax is made."

It has been held that this provision applies to foreign corporations. *Blackstone Manuf. Co.* v. *Blackstone*, 13 Gray, 488. By that decision, a corporation existing under the laws of another State is treated, as to the application of the statute to it, as a person residing in that State; and its corporate existence is so far recognized here that it will be regarded as a person rather than as a company, copartnership, or other association, under the St. of 1878, *c.* 275 (Pub. Sts. *c.* 13, § 47). No distinction is made by the statute between resident and non-resident owners, and the plaintiff stands in the position of a natural person resident of some town in this State other than Boston.

The plaintiff is incorporated under the laws of Connecticut, and has so far complied with the laws of that State as to retain

its existence under those laws; but its business is carried on in Boston, in a room hired and occupied by it, and in which it has office furniture, a safe, fixtures, and other things necessary to carry on its business, and personal property, consisting of merchandise, watches, diamonds, household furniture, &c. pledged to it in its business. Its business is lending money on the security of personal property pledged or mortgaged to it, and, as incident to that, selling such property when not redeemed. The questions presented are, whether any of the property is goods, wares, merchandise, or other stock in trade; and whether the place of business of the plaintiff is a "store" or "shop," within the meaning of the statute.

The consideration that, if the property is not liable to be taxed to the plaintiff in Boston under this provision of the statute, it will escape taxation altogether, is not entitled to much weight in construing the statute, because the principal operation of the statute is, and was intended to be, upon the property of residents of this State, to fix the place where it should be taxed; and it should be interpreted with reference to that purpose, rather than to any incidental effect it may have in rendering property taxable which but for it would be exempt from taxation, as belonging, or being pledged, to non-residents. The question or questions may be stated thus: Is a pawnbroker, resident in this State, who carries on his business in a town other than that in which he resides, in a building hired and occupied by him for the purpose, and who has there furniture necessary for his business, and used in it, for which he is taxable, and personal property pledged to him in the course of his business, for which also he is taxable, to be taxed for such furniture, and for such pledged property, in the place of his residence, or in the place where he carries on his business and keeps the property?

The question is not without difficulty. We think it must depend upon the meaning of the words "store" and "shop" as used in the statute. Any personal property belonging to and used in a business carried on in a store or shop is part of the stock in trade. If a storekeeper who sells goods at retail finds it necessary to the success of his business to have expensive furniture, and to fit up elegant reception-rooms in his store, and

to keep a score of delivery wagons outside of it, the property so used would be a part of his stock in trade. So in regard to property pledged in the course of the business. The pledgee has the possession, and is the only person who can be taxed for the property. If a pawnbroker is a shopkeeper, his interest in the property he holds in pledge belongs to his stock in trade. It is acquired solely in the course of his business, and held only for the use of his business. He is not indeed the absolute owner, but he has an interest sufficient to render him taxable as the owner, and the interest he has, and on account of which he is taxable, belongs to his business and is part of his stock in trade; and for that the statute makes him taxable for the value of the property pledged. We cannot conceive that the Legislature intended that the pledged property acquired and held in the business should be taxed in one place, and the furniture and other property used in it in another place.

The question then is whether the place of business of the plaintiff comes within the designation "store" or "shop." The word "store," as applied to a building and used in the statute, is intended to designate a place where traffic is carried on in goods, wares, or merchandise. *Hittinger* v. *Westford*, 135 Mass. 258. As originally enacted, and for many years after, this provision of the statute was applicable only to property used in traffic. The statute as originally enacted, Prov. St. of 1742–3 (16 Geo. II.) *c.* 31, § 8; 3 Prov. Laws (State ed.) 63; applied only to merchants, traders, or factors carrying on trade or business. It was in accordance with this that the requirement in regard to a store was added in 1753; and for many years after that the statute applied only to merchants, traders, or factors who kept a store. The general intention shown by the course of legislation upon the subject is that personal property, kept and used in an established business carried on in a place other than where the owner resides, shall be taxed in the place where the business is carried on, and not at the residence of the owner. The statutes are so fully referred to in *Hittinger* v. *Westford*, *ubi supra*, that they need not be here cited in detail. Of the purpose and occasion of this provision it was said in *Amesbury Manuf. Co.* v. *Amesbury*, 17 Mass. 461: "Some years since, it was a subject of complaint in Boston, and other commercial towns, that

many of their wealthy inhabitants removed into towns in the vicinity, and there became inhabitants, although they continued their business in the places of their former residence, under their personal management; thereby evading, in a great degree, their just share of the public charges. The clause . . . . was introduced to remedy this inconvenience."

For many years, while the provision was in force, there was no occasion to apply the principle to any business but that of traffic, and, as has been seen, it was limited to the case of merchants, traders, and factors who kept a store. As trade increased and became diversified, and developed into new forms, it naturally came to pass that kinds of business besides that of buying and selling goods became established, and used personal property, in towns other than where its owners resided; and it was in accordance with the spirit of the provision that it should be extended to meet such new state of things. It was accordingly changed by striking out the words " merchants, traders, and factors," and making it apply to all stock in trade, and changing the requirement that the owner should have a store to one that he should have a shop or store. The St. of 1821, c. 107, for instance, (which is cited in 135 Mass. 260,) included goods, wares, merchandise, or other stock in trade, of a person engaged in trade, including stock employed in manufactories, with the proviso that such person hired or occupied a shop, store, or wharf. As by the word " store " in the earlier statutes was intended a building in which the business before included in the statute, that of traffic, should be carried on, so the later statutes intend to include in the description "shop" or "store" any building or room used for carrying on any trade or business adapted to be carried on in a building or room, and employing a stock in trade. The purpose of the proviso or requirement is, that the business shall be an established and not a transient one; that it shall have a local habitation in a town other than where the owner dwells. " Shop," in its popular as well as legal meaning, is not confined to a workshop. It is a word of various significance, and " store " and " workshop " are both included in it, and do not exhaust its meaning. The St. of 1821, c. 107, itself includes in it " manufactories." The word " manufactories " is added to " store " and " shop " by the St. of 1839, c. 139, and is retained since, but

seems not to have changed the meaning, which was to include in the places of business mentioned, " shop, store, or wharf," a building where the business of manufacturing was carried on.

We think the words, as used in the General Statutes, include the plaintiff's place of business. It is a place used for traffic; and if, because the principal traffic is in money, and the traffic in goods, wares, and merchandise is incidental and subsidiary to that, it is not properly a store, it comes within the broader designation of " shop." The principal business, which gives character to the place, is not the buying and selling of goods, but it is the dealing with them. The trafficker in goods exchanges goods for money or for other goods, or money for goods, receiving his return at the time, or at some future time, as may be agreed; the trafficker in money exchanges his money for other money, paid at the time or at some future time. The business of the plaintiff combines the two; it exchanges its money for money to be paid at a future time, and it receives, at the time of the transaction, the possession of goods, with the right to obtain the money by trafficking with them, if it should not be paid at the time fixed. It depends upon the option or the necessity of the other party whether the transaction shall become a traffic in goods or a traffic in money. In the mean time the plaintiff acquires by the transaction the possession of the goods, and such an ownership of them that it only can be taxable for them. Whether the place where such a business is carried on is a store, or not, we think it is a shop, within the meaning of the statute. If a person should steal in it, he would be said to be guilty of shoplifting; the books which the plaintiff keeps in its business are its shop-books; and it may be difficult to distinguish between its business, and that which is carried on in what is called a pawnbroker's shop.

This construction of the statute seems to be the one most in accordance with the decisions upon it heretofore made. See *Little* v. *Greenleaf*, 7 Mass. 236; *Gray* v. *Kettell*, 12 Mass. 161; *Huckins* v. *Boston*, 4 Cush. 543; *Lee* v. *Templeton*, 6 Gray, 579; *Loud* v. *Charlestown*, 103 Mass. 278; *Charlestown* v. *County Commissioners*, 109 Mass. 270; *Stinson* v. *Boston*, 125 Mass. 348; *Hittinger* v. *Westford, ubi supra.*

*Judgment for the defendant.*