### TIPPECANOE VILLAGE v. F. BOERCHER.

BUTCHER WHO PEDDLES MUST PAY LICENSE.

One who buys and slaughters cattle, and divides the carcasses into "roasts," "steaks," etc., suitable for the table, is not a manufacturer within the meaning of sec. 2669, Rev. Stat. If he peddles the meat, he is liable for a village license.

ERROR to the Court of Common Pleas of Miami county.

The original action was commenced before a justice of the peace. Fred. Boercher, who was plaintiff below, for his cause of action against the Incorporated Village of Tippecanoe, alleges in his petition, as follows:

"That said village is a duly organized municipal corporation. That Boercher at the time of the injury complained of was, and for some years before had been, engaged in the business of buying and slaughtering hogs and cattle in this county, which business required the application of skill, labor, capital and machinery. That he bought said animals while they were alive, and by the application of labor, skill and capital, and the use of tools, implements and mechanical devices, and subjecting said animals when slaughtered to divers processes, converted them into lard, bolonga, pudding, sausage and various other meats; that by the use of various tools and the application of skill and labor, requiring great care, the flesh of said animals was carved into steaks, roasts, boiling meats, etc. That to carry on said business required the use of a slaughter-house and a shop, especially adapted to said business, as well as the use of various tools and appliances especial for said business, and no other; and that the proper conduct of said business requires great skill especial for this business and not required in any other, and the employment of various hands; and that said business, so run as aforesaid, has been conducted by plaintiff for the purpose of adding to the value of said materials by the combination of said labor, skill, capital and machinery aforesaid; and that said material was and is gratly enhanced in value, and made ready for use by the efforts of the plaintiff. That when said meat was so prepared, he sold it daily from his meat shop at his home, and also sold some through the country from his wagon, run by him for that purpose.

"That on August 24, 1889, while he was conducting his business as aforesaid, he hauled a part of his meats, that had been prepared by him ready for use, to-wit: steaks of all kinds and sizes usually cut by butchers from beeves; also various kinds of boiling meats and roasts prepared by plaintiff as aforesaid, ready for use—within the corporate limits of said village, and attempted to sell the same, by going from house to house, with his said wagon. That defendant refused to permit him to so sell, and required him to pay to said village a license of one dollar. That to prevent arrest and imprisonment, plaintiff, under protest, paid said sum of money so demanded; which said sum of money was wrongfully and illegally exacted from plaintiff by the defendant."

The prayer is for judgment for the sum so paid and costs of suit.

To this petition the village interposed a general demurrer, which was overruled, and judgment rendered in favor of the plaintiff.

The overruling of the demurrer is the ground relied upon for a reversal.

SHEARER, J.

The question presented requires the construction of sec. 2669 of the Rev. Stat., which provides:

"Section 2669. The council of any city or village may provide by ordinance for licensing * * * hawkers, peddlers, * * * and hucksters in the public streets or markets, and in granting such license, may exact and receive such sum of money as it may deem reasonable; but nothing in this section shall be construed to authorize any municipal corporation to require of * * * the manufacturer of any article manufactured by him, license to vend or sell in any way, by himself or agent, any such article."

The claim is made in argument that the allegations of the petition show the defendant in error to be a manufacturer, within the meaning of the above quoted section, and therefore exempt from the payment of a license.

For a definition of the term "manufacturer" we are referred to sec. 2742, Rev. Stat., defining a manufacturer under the tax laws.   This section declares :

"Every person who shall purchase, receive or hold personal property of any description, for the purpose of adding to the value thereof by any process of manufacturing, refining, rectifying, or by the combination of different materials, with a view of making a gain or pro-fit by so doing, shall be held to be a manufacturer, etc."

So far as this section may be applicable to this case, it merely declares that any person having personal property, the value of which he proposes to enhance by a process of manufacturing shall be held to be a manufacturer.   Or, reduced to the last analysis, a manufacturer is a manufacturer.   So that we derive no aid from this section in our search for the meaning of the word as used in sec. 2669. We doubt its applicability in any view.   For the objects of the sections are quite different.   Section 2669 provides a tariff for protection, the purpose being to exclude non-resident dealers in certain wares from competition with home merchants, while sec. 2742 was enacted as a revenue law, and arbitrarily defines terms to the end that a large class may be reached and subjected to the burden of taxation, without reference to protection.

We must, therefore, look elsewhere for light.

Webster defines "Manufacturer," 1. "One who works raw material into wares suitable for use.   2. One who employs workmen for manufacturing; the owner of a manufactory."   "Manufacture," "To make or fabricate from raw material, by the hand, by art or machinery and work into forms convenient for use, as to manufacture cloth, nails or glass."   "Raw" is defined, 1. "Not altered from its natural state; not roasted, baked, or boiled; not subdued by heat, as raw meat. 2. Not spun or twisted, as raw cotton."   "Meat," "The flesh of animals used for food."   "Wares," "Goods, commodities, merchandise—the latter not generally including provisions daily sold in the market."

The same lexicographer defines "Butcher" to be "one who slaughters animals for market; or whose occupation it is to kill animals for the table.   The word may, and often does include the person who cuts and sells meat."

The defendant in error, with considerable circumlocution, defines himself to be a butcher and peddler ; the latter being "one who carries about commodities on his back, or in a cart or wagon, and sells them."

But does he bring himself within the definition of a "manufacturer?"

It is alleged that he bought cattle and hogs, slaughtered them, and cut up the carcasses into roasts, steaks, etc., for sale to his customers.   Was this working up raw material into wares suitable for use? It would hardly do to say that the steer was raw material, in the proper sense. When his life was taken, and his hide removed, he was raw, in a sense ; and he continued to be raw after he was divided into steaks for sale. "Raw," as we have seen, means "not altered from its natural state."   There was no change in the nature of the beef.   It was beef when the steer was killed ; it was beef when the carcass was cut up; it was beef and only beef when offered for sale. It was fit for food in any of the forms named. Indeed, our forefathers were rather partial to a barbecue.   In these days there seems to be a prejudice in favor of roasts and steaks.   But it is all beef, and raw beef, until the cook takes charge of it.

It is urged that converting a carcass into steaks is as much manufacturing as the grinding of wheat into flour.   We do not think so.   Wheat as such is not suitable for food.   It must be subjected to the skillful manipulations of the miller and the application of machinery to reduce it to flour. It has then been subjected to a process whereby divers elements of the wheat are eliminated ; the commodity has undergone a change, not only of form, but of substance.

In aid of this investigation let us look at some adjudications upon the quest-

tion as to what constitutes a manufacturer; as to who is, and who is not, a manufacturer.

In Hartranft v. Weigman, 121 U. S., 609, 615, it was held that shells cleaned by acid, and then ground upon an emery-wheel, and some of them etched afterwards with acid, and all intended to be sold for ornaments, as shells, were not dutiable as manufactures of shells  *  *  *  but were exempt from duty as "shells of every description not manufactured." In the opinion, Judge Blackford, speaking for the court, says:

"They were still shells. They had not been manufactured into a new and different article having a distinctive name, character or use, from that of a shell. The application of labor to an article, by the hand or machinery, does not make the article necessarily a manufactured article within the meaning of the tariff laws. Washing and scouring wool does not make the resulting wool a manufacture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton. Hay pressed in bales, ready for market, was not a manufactured article, though labor had been bestowed in cutting and drying the grass and baling the hay."

In Hettinger v. Westford, 135 Mass., 262, it was held that cutting and storing ice is not manufacturing; the material is in no way changed or adapted to new and different use.

Byers v. Coal Co., 106 Mass., 131, decides that a corporation organized for mining coal is not a manufacturing corporation.

In People v. Dry Dock Co., 92 N. Y., 487, the court of appeals held that a corporation formed for the purpose of constructing, using, and providing dry and wet docks, for building, raising, repairing, or coppering vessels, was not a manufacturing corporation within the meaning of a statute exempting such corporation from its provisions; and that it was liable to taxation.

In Louisiana (34 La. An., 597), it was held that a cooper who made barrels from staves was not a manufacturer. We should not be willing to go so far.

If the authorities above quoted are law, the defendant in error is not a manufacturer. The beef offered for sale by him was not an artificial product of human industry; it had acquired no changed condition as a new and specific combination, either by the direct action of the human hand, from chemical process devised and directed by human skill, or by the use of machinery. Anderson Law Dic., 654. As we have said, it was from first to last simply beef.

These views are not in conflict with Engle v. Sohn, 41 O. S., 691, where it was held that a person who slaughters hogs, adding to their value by certain processes and by combination with other materials, whereby they are converted into bacon, lard and cured meats, with a view to making a gain or profit, is taxable as a manufacturer. It is obvious, without discussion, that bacon, lard and cured meats, are the result of combination with other materials; of a process involving labor and skill, and that all such commodities are changed from their natural character and condition. Not so with fresh beef.

The defendant in error was not a manufacturer of the commodities offered for sale by him.

Judgment reversed with costs, and cause remanded with instructions to the court below to sustain the demurrer to the petition.

Sullivan & Long, for plaintiff in error.

Kerr & Kerr, for defendant in error.