INHABITANTS OF PERU *vs.* ESTATE OF CHARLES FORSTER.

Oxford. Opinion June 11, 1912.

*Taxation. Personalty. Employed in Trade. Employed in Mechanic Arts.*

Toothpicks stored by a manufacturer thereof in a storehouse preparatory to shipment in the general course of business are not taxable under Rev. St., c. 9, sec. 13, par. 1, as amended by Pub. Laws 1909, c. 4, as personalty "employed in trade," or "in mechanic arts."

On an agreed statement of facts. Judgment for defendant.

Action of debt to recover a tax assessed by the plaintiff town against the estate of Charles Forster, deceased testate, for the year 1910. Plea, the general issue with a brief statement alleging "that said estate is not liable to a personal property tax in said town." An agreed statement of facts was filed and the case reported to the Law Court for determination.

The case is stated in the opinion.

*L. W. Blanchard,* for plaintiffs.

*Robert Treat Whitehouse, and Frank W. Butler,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

HANSON, J. This case comes up on the following agreed statement of facts:

"Charles Forster died on the 9th day of March, A. D. 1901, in Portland, Maine, leaving a last will and testament, which was duly probated in Cumberland County. In accordance with the terms of said will, the property of the deceased was to be held in trust, during the lifetime of Annie E. Forster of Portland, Maine, Charlotte B. Forster of San Diego, California, and Maurice W. Forster of Dixfield, Maine, they to have the income thereof during their lifetime, and at their decease the principal to go to the heirs-at-law of said testator: That on the first day of April, A. D. 1910, Oscar H. Hersey of Strong, Maine, was Trustee of said estate, and as Trustee the said Hersey carried on the business which was left by the testator consisting of the manufacture and sale of toothpicks: That said estate of Charles Forster owned a toothpick factory in Mexico, in the County of Oxford, near the village of Dixfield: That said estate also owned a lot of land in the Plaintiff town, next to and adjoining the tracks of the Maine Central Railroad: That on said land was a building used as a storehouse, in which said toothpicks, which were manufactured just across the river, in Mexico, were stored before being shipped away in the general course of business: That on the first day of April, A. D. 1910, a large amount of toothpicks were stored in said building to the amount of more than five thousand dollars in value: That the said assessors of the town of Peru assessed upon the toothpicks, stored in said Defendant's storehouse in said town of Peru, a tax of one hundred twenty-seven and 50-100 dollars, for the year 1910.

"No questions are raised as to the regularity of the proceedings, in the Plaintiff town, in assessing the tax, if the defendant is liable for any part thereof.

"The real estate tax has been paid.

"If said estate is liable for the tax assessed on the toothpicks stored in the storehouse in said town of Peru, judgment shall be rendered for the Plaintiffs for the amount sued for; otherwise judgment shall be rendered for the defendant."

The plaintiff claims (1) that the toothpicks stored in the defendant's storehouse in the town of Peru cannot be taxed under the laws of this State in any other town, and if taxed at all they must be taxed in the town of Peru.

(2) That the toothpicks are personal property properly taxable in the plaintiff town, under the provisions of R. S., Chapter 9, paragraph 1 of Section 13, as amended by Chapter 4 of the Public Laws of 1909, as follows:

"All personal property employed in trade, in the erection of buildings or vessels, or in the mechanic arts, shall be taxed in the town where so employed on the first day of each April; provided that the owner, his servant, sub-contractor or agent, so employing it, occupies any store, store-house, shop, mill, wharf, landing-place or ship-yard therein for the purpose of such employment."

The defendant contends (1) that the agreed statement brings the case clearly within the provisions of Specification 6 of Section 13 of Chapter 9, R. S., 1903, which is as follows:

"Personal property held in trust by an executor, administrator or trustee, the income of which is to be paid to any other person, shall be assessed to such executor, administrator or trustee, in the place where the person to whom the income is payable as aforesaid, is an inhabitant. But if the person to whom the income is payable as aforesaid, resides out of the State, such personal property shall be assessed to such executor, administrator or trustee, in the place where he resides." And (2) that the taxation of trust estates was the subject of a special statutory enactment and was not changed or modified by Chap. 4, Public Laws of 1909.

In view of the stipulation, it is necessary to consider the second contention of the plaintiff only. Were the toothpicks in question "employed in trade" "or in the mechanic arts" within the meaning of Chapter 9, paragraph 1 of Section 13, as amended by Chapter 4 of the Public Laws of 1909?

Counsel places much reliance on *Desmond* v. *Inhabitants of Machiasport,* 48 Maine, 478, where the non-resident occupied a wharf assigned to him by metes and bounds, to which he brought, from his mills in another town, lumber, placed it thereon, and it there remained for several months, *awaiting sale or shipment,* his right thus to use the premises being by a lease for a fixed, certain

and long period of time, and it was held to be an occupancy con-
templated by the statute. In that case *Campbell* et al v. *Inhabitants
of Machias,* 33 Maine, 419, is cited, in which Shepley, C. J., in
announcing the opinion of the court, remarks "that the design of
the statute was to render liable to taxation the property of indi-
viduals who *so* occupy a mill or wharf as that they should be entitled
to receive, and not liable to pay mill rent for the lumber from time
to time sawed in the one, or wharfage for lumber deposited in the
other," and the court adds: "In this view, the statute requires an
actual occupancy, *implying something more than a mere right to
make temporary deposits* from time to time, or to pass in common
with others, over the wharf, with goods, wares and *merchandise or
lumber* for the purpose of immediate shipment."

In *Farmingdale* v. *Berlin Mills,* 93 Maine, 333, cited by plaintiff,
it was held that logs in a river far from the plaintiff town, but which
reached there subsequent to the first day of April, and were actually
manufactured there, were employed in trade in that town, as defined
by the statute, although sales of the product of the mill were nego-
tiated in Portland and shipments made on orders from the Portland
office,—and cites *Gower* v. *Jonesboro,* 83 Maine, 142, where it is
held that wood piled on a wharf, and which was sold *"in small
quantities to local parties,* but most of it shipped away," was per-
sonal property employed in trade and that the plaintiff was legally
taxable in the defendant town.

The facts in the case cited by plaintiff's counsel are entirely
different from the facts in this case, and the cases cited are, there-
fore, not in point. The following cases are in point.

In *Creamer* v. *Inhabitants of Bremen,* 91 Maine, 508, which was
an action to recover a tax paid under protest, the non-resident was
the owner on the first day of April, 1893, of a quantity of firewood
piled upon a wharf and upon the adjacent shore in the defendant
town. During the preceding winter the plaintiff had cut and hauled
the wood from his own land in the same town. The wood was piled
up awaiting shipment during the spring and summer to Thomaston.
*Held:* That under these circumstances the personal property was
not taxable to the plaintiff in defendant town by virtue of the pro-
visions of R. S., Chap. 6, Sec. 14, clause 1. "This wood under the
above circumstances cannot be said to have been "employed in

trade" in the defendant town. It was not hauled to the wharf to be there sold, nor even to be shipped to the place or different places where the owner might subsequently sell it. It was hauled there for the definite purpose of being shipped from there to a particular place when the river opened for navigation in the spring. It was merely in transit.

In *Hittinger* v. *Westford,* 135 Mass., 258, where a dealer in ice had in a town other than that in which he resided and had his office, a storehouse in which the ice which constituted his stock in trade was kept, and from which it was delivered on contracts principally made elsewhere; held, that the building in which the ice was kept was not a "store" within the meaning of Gen. Sts. sec. 12, clause 1, and that the ice was not taxable to him in that town. . . . "The ice houses were only storehouses, and the comparatively trifling amount of ice which may have been incidentally sold from the ice houses did not change their character into stores." . . . "It is obvious from the whole course of legislation that it has been the purpose as a rule to make personal property taxable where the owner is an inhabitant, with certain well defined exceptions, the important one, so far as questions raised in the cases at bar are affected, being, in effect, that if an inhabitant of one town has goods, wares, merchandise, or other stock in trade, in another town, with which he is engaged in trade or business in such other town, such stock in trade is taxable in such other town, *not if it is merely kept there, or traded in there,* but only in case the owner occupies a store in *which he carries on a trade or traffic* in such stock in trade as he has there."

In *Inhabitants of New Limerick* v. *Watson,* 98 Maine, 379, an action of debt to recover a tax assessed for the year 1900, the defendant resided in Houlton, and on April 1, 1900, owned and occupied a starch factory, dry houses and a storehouse in plaintiff town. In the season of 1899 the defendant manufactured about one hundred tons of starch in his mill, and not selling the same, he stored the starch in his storehouse to await shipment, and it remained there until after the first day of April, 1900. The defendant was in business in Houlton and there had his office, where all his books and accounts were kept, and where all business in connection with the manufacture and sale of starch was transacted. None of

the starch was intended for sale in New Limerick, and none was sold there. It was stored there to be shipped as sales were made by the defendant in his office in Houlton, or by correspondence conducted there. It was *held;* that under the circumstances of this case the starch in question was not employed in the mechanic arts, nor employed in trade within the meaning of R. S., (1888) c. 6, sec. 14, for the purposes of taxation. *Held,* further, that the defendant did not occupy any store or shop in the plaintiff town for the purpose of the employment of this starch in trade. . . . "While a storehouse may under some circumstances come within the meaning of the word 'store' as used in the statute, it does not in this case, because the defendant's storehouse was not occupied by him for the purpose of employing this starch in trade in plaintiff town. The starch was not in a store for trade, but in a storehouse for storage."

Counsel for plaintiff urges that the amendment was made for the purpose of reaching property which would otherwise escape taxation, because of the alleged uncertainty as to the meaning of the statute. But the amendment, adding the word "storehouse," does not enlarge the rights of the plaintiff in the case at bar beyond what they were before the amendment. The case before us is not to be distinguished in principle from *Inhabitants of New Limerick* v. *Watson,* supra. It is therefore the opinion of the court that the toothpicks were not "employed in trade" or "in the mechanic arts" in the town of Peru. The storehouse was not a store in the sense in which the word was used by the Legislature. The toothpicks were not placed there for the purpose of employment in trade, or in the mechanic arts, in that town. They had simply reached the first of many stages in the transit to their destination beyond the town of Peru.

The entry must therefore be,

*Judgment for the defendant.*