TIMOTHY SULLIVAN *vs.* JOHN SHEEHAN.

Suffolk.    March 9, 1899. — May 18, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Contract — Instructions — Money Had and Received.*

Where, in an action for money had and received, it appears that the defendant was
to care for the plaintiff as well as to take charge for him of his money, the plain-
tiff being an old man with no relatives near him, and having gone to spend the
remainder of his life with the defendant and under his care, an instruction re-
quested by the defendant that if " all the money . . . was expended by the de-
fendant in the plaintiff's presence, and with his knowledge and consent, whether
in debauch or otherwise," the plaintiff cannot recover, would be misleading ; and
the defendant has no ground of exception to a charge which states that if the
· money was spent in that way at the request of the plaintiff, he knowing what he
was doing and intending it, that would be such a disposition of the money that
the plaintiff could not afterwards claim to have it paid back; but if the plaintiff
did not in any way acquiesce in that disposition of the money as a part of the re-
payment to him, or as a gift to the defendant, then it should not be deducted.

CONTRACT, for money had and received.    At the trial in the
Superior Court, before *Bond,* J., the jury returned a verdict for
the plaintiff in the sum of $1,737.55 ; and the defendant alleged
exceptions, in substance as follows.

· The plaintiff, who was a widower, over seventy years of age,
without issue living, and with no near relative in the United
States except a brother in St. Louis, was, at the time of the
occurrence of the events hereinafter described, living at the
defendant's house in Randolph.

On or about June 16, 1896, certain moneys on deposit to the
credit of the plaintiff, in two savings banks in Boston, were
transferred from the plaintiff's account to the defendant.    The
plaintiff contended that, besides these accounts so transferred,
he had handed to the defendant, on June 8, 1896, the further
sum of $254 in cash, and that this money was delivered to the
defendant for safe keeping, and that the accounts in the two
savings banks aforesaid were transferred only for the purpose
of redepositing them in the Savings Bank in Randolph, and not
for the purpose of transferring the title thereto absolutely to

the defendant. The defendant denied ever having received the
$254, and claimed, and there was evidence tending to show, that
the bank deposits were transferred to him either as an absolute
gift, or upon the understanding that he should take care of the
plaintiff during life and defray his funeral expenses at his death.
The plaintiff, denying the gift, contended that the actual con-
tract was, in substance, that the defendant should have all the
plaintiff's property at his death, if any was then left, in con-
sideration whereof the defendant was to care for the plaintiff
during the latter's life and bury him suitably; but that the
plaintiff might rescind this contract and leave the defendant's
house at any time when he chose, upon payment to the de-
fendant of the amount due for board, etc.

The defendant contended, and there was evidence tending to
show, that all the money so transferred to him as aforesaid,
with the exception of about $560 on deposit in one of the banks
in Boston, which he had transferred back to the plaintiff on
August 31, 1896, $450 which he had used, at the plaintiff's
solicitation, to discharge a mortgage on the defendant's house,
and $107 on deposit in the Home Savings Bank of Boston,
attached in this action, had, previously to the bringing of this
action, been squandered by himself and the plaintiff, with the
latter's knowledge and consent, in mutual debauch and alcoholic
excesses; that they went to Boston together, from time to time,
and to the savings bank, and that the defendant, in the plain-
tiff's presence and with his knowledge, then drew some of this
money, in various amounts, which was then spent by the de-
fendant in company with the plaintiff in the manner just
described.

The defendant asked the judge to rule as follows:

"If the jury find that there was no contract or agreement
between the parties, and no gift, but that after the transfer of
the deposits to the defendant, all the money, with the exception
of the amount paid by the defendant to discharge the mortgage
on his house and the amount remaining in the Five Cents Sav-
ings Bank, on August 31st, and transferred back to the plain-
tiff by the defendant on that date, was expended by the
defendant in the plaintiff's presence, and with his knowledge
and consent, whether in debauch or otherwise, and that the

money paid to discharge the mortgage was so paid by the plaintiff's instruction and request, the plaintiff cannot recover."

The judge declined so to rule, and upon this point instructed the jury as follows:

" There is still another question which has been raised ; that is, whether or not the defendant is entitled to have deducted the sum which he says he spent in company with the plaintiff after the 4th of July, — from the 5th of July, — when they went about from place to place and day after day, drinking and squandering this money. Of course, if that money was spent at the request of the plaintiff in that way, the plaintiff knowing what he was doing, intending it, as I have said to you, the same way that he would request the mortgage to be paid, and the money was spent in pursuance of a request of that kind, that would be such a disposition of the money that the plaintiff could not afterwards claim that he was entitled to have it paid back. Therefore, if that is the way the money was spent, it should be deducted. But if, on the other hand, the plaintiff did not in any way acquiesce in that disposition of the money as a part of the repayment to him, or as any gift on his part to the defendant, then such sum should not be deducted. It depends altogether on the conduct of the plaintiff whether or not you are satisfied that substantially the money was paid by the defendant for the mutual benefit of the two, substantially at the request of the plaintiff and with his consent. Now, if that were so, then it should be deducted; if that were not so, then it would not be any payment back of the money. In other words, if the defendant had this money wrongfully of the plaintiff, he does not pay it because he treats him and gets him drunk. That is not payment of the plaintiff; it is only an abuse of the plaintiff with the plaintiff's own money. In order to find that he is to have it deducted, you must be satisfied that the money was paid for the benefit of the plaintiff with his consent."

The defendant excepted.

*A. P. French*, for the defendant.

*F. Burke*, for the plaintiff.

BARKER, J.   It is conceded that the jury has found, under correct instructions, that the money for which the plaintiff

sues was his property, and the present contention is as to the instructions given to the jury upon the question whether or not the plaiutiff can recover for that portion of his money which the defendant spent in company with the plaintiff going about from place to place, and drinking and squandering money.

The finding of the jury shows that the arrangement between the parties was as claimed by the plaintiff, and that the defendant was to care for the plaintiff as well as to take charge for him of his money, the plaintiff being an old man with no relatives in this country except a brother in St. Louis, and having gone to spend the remainder of his life with the defendant and under his care.

The instruction requested by the defendant need not have been given in any event in the terms requested, if the jury were correctly and sufficiently instructed upon the law involved in the request. We think that, under the circumstances of the case, an instruction that if " all the money . . . was expended by the defendant in the plaintiff's presence, and with his knowledge and consent, whether in debauch or otherwise," the plaintiff could not recover, would have been liable to mislead the jury and to induce them to suppose that any money which the defendant spent in the presence of the plaintiff, and with his knowledge and consent, must be treated as in effect repaid by the defendant, whereas to have the effect of a payment it would be necessary that the plaintiff should understand and assent that such was to be the effect.

Unless the word " benefit," which occurs twice in the latter portion of the charge, was understood to mean more than is meant by the broad word " use," the charge as given was sufficiently favorable to the defendant. We think that if the defendant thought the use of the word " benefit " ambiguous or objectionable, he should have called the attention of the presiding justice specifically to the point, and that he cannot now complain of the use of the word under his general exception. The charge stated the law plainly and correctly, that if the money was spent in that way at the request of the plaintiff, he knowing what he was doing and intending it, that would be such a disposition of the money that the plaintiff could not afterwards claim to have it paid back; but if the plaintiff did

not in any way acquiesce in that disposition of the money as a part of the repayment to him, or as a gift to the defendant, then it should not be deducted. The rest of that portion of the charge excepted to is not inconsistent with this statement of the law, construing the phrases "the mutual benefit of the two" and "for the benefit of the plaintiff" in their ordinary legal sense. It was certainly correct to say that if the defendant had the money wrongfully of the plaintiff "he does not pay it because he treats him and gets him drunk. That is not payment of the plaintiff; it is only an abuse of the plaintiff with the plaintiff's own money."          *Exceptions overruled.*