BOSTON AND MAINE RAILROAD *vs.* TOWN OF BILLERICA.

Middlesex. November 29, 30, 1927.— February 29, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Tax,* Railroad, Abatement. *Statute,* Construction, Revision. *Words,* "Manufacture."

In the interpretation of statutes, the natural import of words according to the ordinary and approved usage of the language when applied to the subject matter of the statute is to be considered as expressing the intention of the Legislature.

Involved in the conception of the word "manufacture" as used in G. L. c. 59, § 18, cl. 2, as amended by St. 1924, c. 321, § 2, is the implication of change wrought through the application of forces directed by the human mind, which results in the transformation of some preëxisting substance or element into something different, with a new name, nature or use.

Upon detailed findings by a commissioner to whom were referred specific questions of fact which arose upon a petition by a railroad corporation

for abatement of a tax assessed by a town upon its machinery in shops in which locomotive engines and passenger cars were repaired, it was *held,* that some of the work carried on by the corporation with the machinery must be regarded as manufacture, such as the fabrication of various parts for the repair of locomotives, the making of locomotive and car springs, the construction of doors and sashes from lumber sawed and planed for that purpose, the fashioning of car axles and reclamation by welding of those outworn, and the formation from raw material of watercoolers and ventilators; and that therefore the machinery was taxable under the provisions of G. L. c. 59, § 18, cl. 2, as amended by St. 1924, c. 321, § 2, as "machinery employed in . . . manufacture."

The relative extent of manufacture by the railroad corporation as compared with the extent of its other work in the repair shops was not a factor of importance in determining whether the machinery in question was subject to taxation in the circumstances above described: nothing in the words of the statute afforded justification for resort to the ratio between machinery employed in manufacture and that used in other departments of the owner's business as throwing light upon the problem of taxation.

The fact, that the machinery of the railroad corporation was not employed in the manufacture of products for sale in the general market, but for use in the business of the manufacturer, was not decisive.

Machinery used in the shops in question in supplying and distributing water which was used entirely in connection with work done on the premises and for no other purpose was taxable under the same statute as "machinery employed . . . in supplying or distributing water."

The elision in G. L. c. 59, § 18, cl. 2, of all reference to water companies, so that by the terms of the revised statute machinery employed in supplying or distributing water became taxable where situated "to the owner or any person having possession of the same," although it was not owned by a water company, was not a mere verbal change made in revision, but was an alteration of substance; the altered meaning of the statute was retained in St. 1924, c. 321, § 2.

Machinery used in the shops in question in the generation of electricity was employed in a branch of manufacture, within the meaning of the statute.

Upon a blank form, submitted by the assessors to the railroad corporation above described for a list of its property under G. L. c. 58, § 5, was a statement, "A list of the machinery is required. A statement of the value of the whole is not sufficient." The blank easily could have been changed so as to conform precisely in its description to the property required to be listed. The corporation, at the end of a somewhat detailed list of its real estate, inserted merely these two items: "Fixed machinery $101,940. Yard Hydrants, Mains, etc. $50,250." *Held,* that this was not a list such as is required by G. L. c. 59, §§ 29, 61, as a condition precedent to having an abatement, and warranted the dismissal of the petition.

PETITION, filed in the Superior Court on June 4, 1926, for abatement of a tax assessed upon the petitioner in 1925.

The petition was referred to a commissioner for a preliminary report upon specified questions of fact.   Material facts found by the commissioner are stated in the opinion. The petition then was heard by *Hammond*, J., upon the facts stated in the report of the commissioner, which the parties agreed to be true.   The judge ruled "that in 1925 the petitioner owned machinery in Billerica 'used in manufacture' within the meaning of G. L., c. 59, § 5, cl. 16, as amended by St. 1924, c. 321, and therefore subject to local taxation; that the tax list brought in by the petitioner in 1925 was not a sufficient list to enable the petitioner to maintain an appeal to this court from the decision of the assessors upon the petitioner's application for an abatement"; and the petition accordingly was dismissed.   The judge reported the action to this court for determination.

*J. M. O'Donoghue*, (*F. N. Weir & M. J. Cohen* with him,) for the petitioner.

*M. G. Rogers*, for the respondent.

RUGG, C.J.   This is a petition for abatement of taxes assessed for the year 1925 on certain machinery owned by the railroad corporation and situated in Billerica.   It was taxed upon the theory that it was "Machinery employed in any branch of manufacture or in supplying or distributing water," as those words are used in G. L. c. 59, § 18, cl. 2, as amended by St. 1924, c. 321, § 2, and hence taxable where situated.   The contention of the railroad corporation is that this machinery was used in the business of transportation and was not "used in manufacture or in supplying and distributing water," and hence was exempt from local taxation under G. L. c. 59, § 5, as amended by St. 1924, c. 321, § 1, and was subject indirectly to taxation by being included in the valuation of its franchise and thus increasing its franchise tax levied under G. L. c. 63, §§ 53, 54, 55, 58, and payable to the Commonwealth.   A further contention of the railroad corporation is that, even if it be wrong in its main contention and if such property was taxable under said c. 59, § 18, as amended, it has complied with the legal formalities prerequisite to obtaining in these proceedings a reasonable abatement.   A commissioner was appointed

to make preliminary findings of fact upon specified issues. His findings upon the point whether machinery owned by the railroad corporation and situated in Billerica was or was not used in manufacture in substance were these. The railroad was, in 1925, an extensive system engaged in the transportation of freight and passengers, operating 4,287 miles of tracks in five States and in the Province of Quebec, having many thousands of employees and owning 1,056 locomotives, 1,702 passenger cars, 17,909 freight cars, and numerous other cars. In order to carry on the business of transportation efficiently, it is necessary for the railroad corporation to maintain repair shops where its locomotives and cars may be overhauled, repaired, and kept in effective and safe condition. There are two large shops for the repair of freight cars located respectively at Fitchburg, Massachusetts, and Concord, New Hampshire. In addition to these there are seven small shops at different places where less important repairs are made. The principal point at which repairs to locomotives and passenger cars are made is at Billerica, Massachusetts. At that place is located an extensive establishment covering many acres, employing about 1,600 men, devoted exclusively to the repair of locomotives and passenger cars, where substantially all the repair work on locomotives and passenger cars is done for the whole of the railroad's system. There are at least eight large buildings of varying dimensions, in which these repairs are made. These buildings and the use to which each is devoted need not be described in detail. As shown by the commissioner's report, a great amount of strictly repair work is done. We refer only to the portions of his report which describe processes resembling or constituting manufacture. In the locomotive shop is a large amount of heavy machinery for the repair of locomotives. A part of this building is called the machine shop, where is done "all the machine work on the parts. Old parts which are worn are refinished or built up, and new parts are made to take the place of those which are lost, broken, or worn beyond repair. Crank pins, springs, rings for cylinder packing, valve bodies, various plugs and injector parts connected with the brass work of the loco-

motives, safety valve parts, studs and bolts of various kinds and sizes are made in this shop.  These parts are all made from raw material bought elsewhere.  Castings are not made on the premises, but are bought in the rough and refashioned and adapted to particular uses.  The tools and dies used in the shop are made there.  Under the steam hammers are shaped draw-bars, spring rigging, brake rigging parts, and other forgings.  Sheets of metal are bent and riveted over the locomotive boilers as boiler sheets.  The making of parts is a small percentage of the entire work done at Billerica, and is confined to articles which, because of the special use for which they are required, cannot readily be bought.  Probably 60,000 different articles used in the repairs are carried in stock in the storeroom, of which about 55,000 are purchased all ready to use, the remaining 5,000 being made in the shops.''  Another large building is the blacksmith shop, where "the blacksmith work for the locomotive shop is done.  It is equipped with steam hammers, planers, and various styles of forging machinery adapted for making the various parts that go into locomotives, from the smallest bolt to the largest and most complicated forging.  In this shop also locomotive and car springs are repaired, and some new springs are made."  Another shop is principally de-voted to the mounting of car wheels.  "These wheels have been purchased elsewhere, but here the hubs are bored, the axles turned and fitted, and the wheels pressed on to the axles.  Some of the wheels are used at the Billerica shop, and others are shipped to other points on the system to be used where needed.  In this shop also air brake parts are repaired, and the blacksmith work is done which is necessary for the repair of passenger cars.  Many car axles are here reclaimed by welding processes in which metal which has been worn off in service is replaced."  The power plant is in another building.  "It consists of boilers, air compressors, electrical dynamos, and pumps, used for supplying power, compressed air, water, and steam, for the operation of the entire plant.  The boiler room is equipped with machinery for effectively handling coal and ashes.  Electricity is here developed which is used exclusively for lighting the buildings

and premises and for supplying electrical current for the motors that drive the shop machinery.    In this building also are the water pumps used to supply water throughout the shops."    In the coach shop "passenger cars undergo repairs ranging from the renewal of a few pieces of siding to the replacement of the entire wooden superstructure, but no new cars are made.    Here the lumber is sawed and planed for the various purposes for which it is to be used.    In this building also is a cabinet shop in which doors, sashes, and interior parts of passenger cars are made.    Under this roof is also a sheet metal shop where the general smith and sheet metal work for passenger cars is done.    This work includes the making of watercoolers, ventilators, and other parts. . . . All the parts and tools made in the different shops are used solely in repair work and replacement connected therewith on the company's locomotives and cars."

The question to be decided is whether the machinery thus described was "employed in any branch of manufacture" or was "used in manufacture" within the meaning of the governing statutes already quoted.    In the interpretation of statutes, the natural import of words according to the ordinary and approved usage of the language when applied to the subject matter of the act, is to be considered as expressing the intention of the Legislature.    *Hittinger* v. *Westford*, 135 Mass. 258, 259.    *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 374.    The dominant statutory word in this connection is "manufacture."    It is to be observed that the statute is not directed to a description of the owner of the machinery as the basis of taxation or exemption from taxation.    There is nothing in the statute concerning the occupation of the owner or the nature of the business conducted by the use of the machinery.    The legislative words are confined to the machinery and the ascertainment of the uses to which it is put.    The machinery must be situate in a particular municipality in the sense of being there with some permanence and not temporarily; it must be "used in manufacture" or "employed in any branch of manufacture" before it can be taxed where situated.    Involved in the conception of manufacture is the implication of change wrought through

the application of forces directed by the human mind, which results in the transformation of some preëxisting substance or element into something different, with a new name, nature or use. *Anheuser-Busch Brewing Association* v. *United States*, 207 U. S. 556, 562. Decisions eliminating certain processes from classification under manufacture as a descriptive term do not reach to the case at bar. It has been held that corporations engaged in supplying and conveying water, *Dudley* v. *Jamaica Pond Aqueduct Corp.* 100 Mass. 183, *Coffin* v. *Artesian Water Co.* 193 Mass. 274, 276, mining coal, *Byers* v. *Franklin Coal Co.* 106 Mass. 131, 135, harvesting ice, *Hittinger* v. *Westford, supra,* page 262, storing manufactured goods, *Stone* v. *Howard Ins. Co.* 153 Mass. 475, quarrying stone, *Wellington* v. *Belmont*, 164 Mass. 142, printing a newspaper, *Barron* v. *Boston*, 187 Mass. 168, *Evening Journal Association* v. *State Board of Assessors*, 18 Vroom, 36, 41, are not manufacturing corporations, and that machinery used in furtherance of their corporate purposes is not employed in manufacture. See, also, *Ingram* v. *Cowles*, 150 Mass. 155, *People* v. *New York Floating Dry-Dock Co.* 92 N. Y. 487, 489. There has been some diversity of view among judges who have attempted to define the word "manufacture" and to apply such definitions to specific facts. See *Central Trust Co. of Illinois* v. *Lueders & Co.* 137 C.C.A. 387, 391–395. It is not necessary to examine such decisions.

In holding that the brewing of beer in one's own home solely for personal use was to manufacture, it was said in *Commonwealth* v. *Green*, 253 Mass. 458, 459, "The verb 'manufacture' is synonymous with make. To manufacture is to make wares or other products by hand, machinery or other agency. It may also be defined to work, as raw or partly wrought materials into suitable forms for use." This may be accepted as a working description of manufacture for the present case.

It is manifest that some of the work carried on by the railroad corporation with its machinery in its shops at Billerica, considered abstractly, must be regarded as manufacture. The fabrication of various parts for the repair of

locomotives, the making of locomotive and car springs, the construction of doors and sashes from lumber sawed and planed for that purpose, the fashioning of car axles and reclamation by welding of those outworn, the formation from raw material of watercoolers and ventilators, plainly constitute manufacture. It is also plain that, considered concretely, the amount of manufacture thus carried on in the railroad shops at Billerica is extensive. Many who would without question be regarded as engaged in manufacture may produce far less in quantity than is disclosed in this record as having been manufactured by the railroad. It is too clear for further discussion that any ordinary business corporation engaged in making chattels of this nature and to this extent would be engaged in manufacture and would be using machinery to that end. The relative extent of manufacture by the railroad corporation as compared with the extent of its other work in the repair shops is not a factor of importance. The test established by the statute is not whether the manufacture in which machinery is employed constitutes a large or a small part of the entire business in which machinery is used. Nothing in the words of the statute affords justification for resort to the ratio between machinery employed in manufacture and that used in other departments of the owner's business as throwing light upon the problem of taxation. The single standard to be found in the statute is whether the machinery is "employed in any branch of manufacture" without reference to the main business of the owner, or to the size of the business of manufacture.

A weighty argument has been founded on the history of the formation of business corporations and of railroad corporations. The earliest provision for the taxation of corporate franchises and all the intervening reënactments down to the one at present in force have required the deduction, among other items, of machinery taxed locally, in order to ascertain the value of the corporate franchise on which the excise tax is levied. See St. 1864, c. 208, §§ 1, 5, 6, G. L. c. 63, § 55, and marginal references. This deduction applies to railroad as well as to other corporations. While this alone might not be enough to render machinery of a railroad

company employed in any branch of manufacture subject to local taxation, it is an indication that the general words touching local taxation of machinery were intended to be given their natural scope and not to be interpreted in any constricted sense.    The earliest provision for the local taxation of machinery is found in St. 1832, c. 158, § 2. It was there enacted that "all the machinery employed in any branch of manufactory, and belonging to any corporation . . . shall be assessed in the respective cities, towns or other places, wherein such machinery may be situated or employed . . . ."    These descriptive words are broad enough to include railroads, some of which had been incorporated before that time.    Those inclusive words without substantial change are found in Rev. Sts. c. 7, § 10, cl. 2; Gen. Sts. c. 11, § 12, cl. 2; Pub. Sts. c. 11, § 20, cl. 2.    Whatever might be thought to be the force of the subsequent provision in each of those statutes, to the effect that in assessing stockholders for their shares "in any manufacturing corporation," suitable deduction for such local taxation shall be made, if it had arisen at an early date, we are of opinion that it cannot now be of controlling significance.    Such subsequent provision and reference to "manufacturing corporation" disappeared with the enactment of R. L. c. 12, § 23, cl. 2, and is not found in the general revision of the tax laws in St. 1909, c. 490, Part I, § 23, cl. 2, or in G. L. c. 59, § 18, cl. 2.    There may have been other reasons for such change.    Except as the property of railroad corporations has come within some principle of exemption, it always has been subject to taxation as has that of other corporations.    *Boston & Maine Railroad* v. *Cambridge*, 8 Cush. 237.    *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390, and cases there collected.

The circumstance, that a corporation, as incidental to some other main object, manufactures a comparatively insignificant by-product, would not be sufficient to warrant its classification as a manufacturing corporation.    *People* v. *Roberts*, 155 N. Y. 408, 411.    *Commonwealth* v. *Keystone Laundry Co.* 203 Penn. St. 289.    *State* v. *Board of Assessors,* 36 La. Ann. 347.    That principle is not pertinent to the

case at bar because the statute has regard solely to the use to which the machinery is put, and not to the main object of the owner's business.

. The fact that this machinery was not employed in the manufacture of products for sale in the general market, but for use in the business of the manufacturer, is not decisive. One can manufacture goods for his own consumption as well as for sale. *Bubb* v. *Missouri, Kansas & Texas Railway,* 89 Kans. 303. *Commonwealth* v. *Green,* 253 Mass. 458. The words of the statute are directed to the use to which the machinery is put, and not to the purpose to which the things manufactured are put.

We are of opinion that the result of the present governing statues and those in force for many years, interpreted according to the usual canons of construction, is and has been to include railroad corporations as well as other corporations and to make taxable locally the machinery of railroad corporations as well as of all other corporations if the other requisite conditions are found to exist.

The commissioner found, also, that a part of the machinery at the Billerica shop was used in supplying and distributing water which was used entirely in connection with work done on the premises and for no other purpose. This class of machinery comes within the express words of G. L. c. 59, § 18, cl. 2, as amended by St. 1924, c. 321, § 2, which makes subject to local taxation "machinery employed . . . in supplying or distributing water." These words are not confined in operation by anything to be found in this or other clauses or sections of the statute. They are unrestricted in their scope. They first appear in this broad form of expression in the General Laws. The statutory history of these words shows that machinery used in connection with supplying water first appeared as a subject for taxation in St. 1907, c. 329. By that act the real estate and machinery of water companies (except such as by charter had been made exempt from taxation) were made subject to local taxation. It is not a violent inference that this act was passed by reason of the decision in *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491, wherein it was held that land of a chartered

water company was not subject to local taxation. That act was amended by St. 1908, c. 193, and appeared in substance in St. 1909, c. 490, Part I, § 11. Under the law as it then stood and remained until the enactment of the General Laws, machinery used in supplying water was subject to local taxation only when owned by water companies. In the enactment of the General Laws, however, all reference to water companies disappeared, and the provision as to taxation of machinery thus used was included in the general descriptive phrase that it should be assessed where situated "to the owner or any person having possession of the same." Those words are retained in St. 1924, c. 321, § 2. This is something more than a mere verbal change in the revision of a statute, which does not vary its meaning. *Main* v. *County of Plymouth,* 223 Mass. 66, 69. It is an alteration of substance. Whereas theretofore such machinery was taxable locally only when owned by a water company, by that revision it was made taxable to the owner or person in possession. The preëxisting statute and the revision are not susceptible of the same meaning. Construed according to the natural meaning of words, it is impossible to give the present governing statute any other signification than that machinery used in supplying or distributing water must be taxed locally, whoever may be its owner.

It has not been argued that machinery used in the development of electricity was not employed in some branch of manufacture. We are of opinion that machinery used in the generation of electricity, as described by the commissioner, constituted employment in a branch of manufacture. *Duncan* v. *New England Power Co.* 225 Mass. 155. *Bates Machine Co.* v. *Trenton & New Brunswick Railroad,* 41 Vroom, 684. *People* v. *Wemple,* 129 N. Y. 543. *In re Charles Town Light & Power Co.* 183 Fed. Rep. 160, affirmed in *Charles Town Light & Power Co.* v. *Delone,* 184 Fed. Rep. 986.

The railroad corporation used a form of list for the return of property for taxation as provided by the commissioner of corporations and taxation under G. L. c. 58, § 5. This form contained an instruction that corporations, of the class to

which railroads belong, "are required to list only the machinery used in manufacture or in supplying or distributing water, and poles, underground conduits, wires and pipes." It contained, also, numerous blanks as to personal estate. No one of these exactly conformed to the items described in the instruction just quoted. There were, however, two blanks for machinery, one for that "used in the conduct of a business" and one for such machinery not owned but operated under lease or by payment of royalty. Under each of these blanks was the statement, "A list of the machinery is required. A statement of the value of the whole is not sufficient." Either of these blanks could have been changed easily so as to conform precisely in its description to the property required to be listed. Instead of that being done in the list filed by the railroad corporation at the end of a somewhat detailed list of its real estate, there were inserted these two items: "Fixed machinery $101,940. Yard Hydrants, Mains, etc. $50,250." This was not a list such as is required by G. L. c. 59, §§ 29, 61, as a condition precedent to having an abatement. The case at bar is governed on this point by *Boston Rubber Shoe Co.* v. *Malden*, 216 Mass. 508, where it was said at page 510, that such a list is "the equivalent of a catalogue, inventory or schedule itemized in sufficient detail to convey a reasonable understanding of the extent and nature of the subject to which it refers." The list as filed by the railroad corporation is manifestly less complete than the one before the court in *Great Barrington* v. *County Commissioners*, 112 Mass. 218, and in *Troy Cotton & Woolen Manufactory* v. *Fall River*, 167 Mass. 517. Since the railroad had machinery subject to taxation, the tax assessed was not void, and its only remedy was by a petition for abatement; and because it did not file a proper list, it is not entitled to an abatement. *Central National Bank* v. *Lynn*, 259 Mass. 1, 6, 7, 13, and cases there collected and reviewed.

The order dismissing the petition was right and is

*Affirmed.*