THE HAMILTON MANUFACTURING COMPANY *vs.* CITY OF LOWELL.

Middlesex.    October 10, 1930. — February 24, 1931.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Tax*, Abatement: "person aggrieved"; Assessment: list; On machinery. *Estoppel. Receiver. Practice, Civil,* Complaint under G. L. c. 59, § 65, Exceptions. *Sale.*

Where both parties save exceptions at a hearing of a complaint for the abatement of a local tax under G. L. c. 59, § 65, and separate bills of exceptions are filed, it is a needless expense and troublesome increase in the bulk of papers presented to this court for both bills to include a copy of the report of a commissioner; if the parties can not agree as to a division of the expense of a single printing of such report, the court can make an order as to such division. Per RUGG, C.J.

Receivers were appointed of a corporation owning land and a factory thereon. They made an agreement to sell the physical property of the corporation, conveyance to be made in March of a certain year and the purchaser to assume and pay the taxes assessed for that year. The conveyance was not made until shortly after April 1. The taxes assessed on April 1 were paid in part by the purchaser and in part by persons to whom the purchaser. sold the property. The purchaser brought a complaint under G. L. c. 59, § 65, in the name of the corporation. *Held,* that

(1) The corporation was a "person aggrieved" within the meaning of the statute: the primary obligation to pay the taxes rested upon it, since it was the owner of the property on April 1;

(2) The complaint properly could be prosecuted in the name of the corporation by the purchaser as the person beneficially interested;

(3) The corporation was the proper party to file with the assessors a true list of its property subject to taxation as foundation for the abatement proceedings;

(4) Payment of the tax by the purchaser and the persons to whom he had sold the property was an authorized payment in behalf of the corporation and constituted adequate compliance with G. L. c. 59, § 68.

It *was inferred* by this court that the receivers of the corporation above described had authority to file the list above described.

G. L. c. 59, § 68, does not require that a tax be paid previous to the filing of a complaint relative thereto under § 65, but merely that it appear at the hearing of the complaint that the tax has been paid.

Proceedings for abatement of taxes, although in the nature of actions at law, are prescribed throughout by statute, and the rules as to procedure in actions at common law are not applicable. Per Rugg, C.J.

The factory of the corporation above described contained machinery which had been used for many years in manufacturing. Owing to financial difficulties, the receivers ceased manufacturing and closed the factory about six months previous to April 1, but the machinery was not dismantled, nor was the integrity of the factory as a manufacturing entity substantially affected. On April 1 the machinery remained susceptible of use for manufacturing as before. The list filed with the assessors by the receivers contained a detailed enumeration, description and valuation of the machinery, with a statement that the "entire plant has not been operated since . . . [the previous October], and due consideration should be given the fact that the machinery has not produced any material and has actually been of no value." *Held*, that

(1) In the circumstances, the corporation was not estopped by the filing of the list to contend that the machinery was not subject to taxation;

(2) In the circumstances, the machinery on April 1 was taxable under G. L. c. 59, § 18, Second, as amended by St. 1924, c. 321, § 2.

A correct decision by the Superior Court will be affirmed by this court although the reason stated for it by the trial judge is incorrect.

COMPLAINT under G. L. c. 59, § 65, filed in the Superior Court on June 11, 1928.

The complaint was referred to a commissioner and afterwards was heard by *T. J. Hammond*, J., upon his report and other evidence, material portions of which are described in the opinion. The judge denied, among other rulings requested by the defendant, a ruling as follows: "13. If the machinery owned by the petitioner was not used in manufacture, or otherwise used in the conduct of the business of petitioner, during any part of the year 1927 or at any time subsequent to October, 1926, then said machinery was not lawfully taxable to the petitioner by the respondent as of April 1, 1927."

The judge also ruled that the complainant was bound with respect to the taxability of its machinery by the fact that the machinery was included in the list filed with the assessors; and ordered judgment for the complainant in the sum of $53,753.15. Both parties alleged exceptions.

*B. E. Eames,* for the plaintiff.

*H. V. Charbonneau,* City Solicitor, (*P. J. Reynolds* with him,) for the defendant.

RUGG, C.J.   This is a complaint under G. L. c. 59, § 65, by way of appeal from the refusal of the assessors of the defendant to abate taxes assessed as of April 1, 1927, upon the land, buildings and machinery of the complainant. The case, after being referred to a commissioner, was heard upon his report and other evidence by a judge of the Superior Court.

Both parties alleged exceptions and filed separate bills of exceptions.   In each is printed the comprehensive and long report of the commissioner.   This was a needless expense and a troublesome increase in the bulk of the papers. A single copy of that report would have been better. The parties doubtless could have agreed as to the division of the expense of printing it.   If not, the court could have made an order as to such division.   *Barrell* v. *Globe Newspaper Co.* 268 Mass. 99.

The first contention of the defendant is that the complainant is not a " person aggrieved " by the taxes assessed upon it or by the refusal of assessors to abate that tax within the meaning of G. L. c. 59, §§ 59, 64, 65, and hence cannot prevail.   The facts pertinent to the determination of that contention are these:   The complainant, once a highly prosperous manufacturer of cotton goods, had fallen into financial distress.   After numerous. ineffectual attempts at rehabilitation, receivers were appointed, manufacturing was discontinued, and the receivers were authorized to accept an offer of $700,000 for the physical property.   See *Boucher* v. *Hamilton Manuf.. Co.* 259 Mass. 259, where proceedings touching that matter are set forth. Shortly after the decree of the Superior Court authorizing the sale, and pursuant thereto, an agreement was made for the sale, conveyance to be made on or before March 15, 1927.   The purchaser, however, declined to go through with the transaction until litigation involving the validity of that decree had been determined by the Supreme Judicial Court; but on April 14, 1927, the day following the

rescript affirming the decree, the conveyance was made. The deed, drafted before but not delivered until after April 1, made no mention of taxes for 1927. The obligation as between the parties to pay the taxes assessed as of April 1, 1927, was in truth assumed by the purchaser. In October, 1927, a petition for abatement of the taxes in the name of The Hamilton Manufacturing Company, signed by its receivers, was filed with the board of assessors of the defendant. This petition was denied. On June 8, 1928, the Superior Court allowed the petition of the purchaser for leave to prosecute the present proceeding in the name of the complainant but upon the understanding that it would be done at no expense to the receivers and that the assets in their hands were not thereby to be subjected to any financial obligation.

The words "person aggrieved" in these sections of the tax law "mean one whose pecuniary interests are or may be adversely affected." *Hough* v. *North Adams,* 196 Mass. 290, 291. *Essex Co.* v. *Lawrence,* 214 Mass. 79, 87. We are of opinion that the complainant was a person aggrieved in this sense. It was the owner of record and the owner in fact of the property upon which the assessment was laid. The tax was rightly assessed. One of several causes might have prevented the performance of the agreement for the sale of the property. The decree authorizing the sale might have been reversed by the full court. The purchaser might have been disabled financially from carrying it out. The agreement might have been abrogated by the parties. The property might have been destroyed in substantial part. *Libman* v. *Levenson,* 236 Mass. 221. The agreement between the seller and the buyer of the property that the latter should assume and pay the taxes was in no way binding upon the collector of taxes. He was not a party to it. Whether he could under any circumstances become a party to such an agreement need not be considered. The primary obligation to pay the taxes rested upon The Hamilton Manufacturing Company. But for the receivership, the collector of taxes might have brought an action at law against that

company to collect the amount due for taxes. G. L. c. 60, § 35. It would be the duty of the court in the receivership proceedings, upon proper representation or intervention by the collector of taxes, to order the taxes paid by the receivers. *Waite* v. *Worcester Brewing Co.* 176 Mass. 283. *Equitable Trust Co. of New York* v. *Kelsey,* 209 Mass. 416. *Boston* v. *Turner,* 201 Mass. 190, 195, and cases cited. G. L. c. 206, § 31. The real estate was subject, after the first of April, to the lien for the payment of the taxes. The rights and obligations arising from agreement between the complainant and the purchaser were of no legal interest to the collector of taxes charged with the performance of independent duties under the statutes as a public officer. *Bolster* v. *Lawrence,* 225 Mass. 387, 389. The circumstance that the complainant, if compelled to pay the taxes, might have a right of action over against the purchaser of the property does not have the effect of removing the complainant from classification as a " person aggrieved." That right of action might become worthless. It has been held that the purchaser of real estate after the assessment date is not a person aggrieved by an overassessment because he was not the person assessed and the primary liability for the tax is upon the person assessed. *Dunham* v. *Lowell,* 200 Mass. 468. *Burr* v. *Boston,* 208 Mass. 537, 539. To adopt the contention of the defendant on this point would result in holding that there could be no proceeding whatever for abatement of the tax, a statutory interpretation not permissible unless required by inescapable legislative mandate.

The proceedings may be prosecuted in the name of the complainant by the purchaser as the person beneficially interested. *Hart* v. *Western Rail Road,* 13 Met. 99, 106. *Goodrich* v. *Stevens,* 116 Mass. 170. *Fay* v. *Guynon,* 131 Mass. 31.

The complainant was the owner of the property upon which the tax was assessed on April 1, and until April 14, 1927. It was, therefore, the taxpayer, the person subject to taxation and the only one to file the true list of its property subject to taxation on the taxing date as founda-

tion for proceedings for abatement. G. L. c. 59, §§ 29, 61. The complainant properly could file the list, even after the conveyance of the property. The list filed was a proper and sufficient list. There is in the record no copy of the decree appointing the receivers of the complainant. In view of the extensive powers exercised by them, as shown by the present record, it will be inferred that they had authority to file proper lists to protect the property of the complainant. There is nothing in *Archambeau* v. *Platt,* 173 Mass. 249, at variance with this conclusion.

The contention of the defendant that it is entitled to prevail because the tax was not paid before the complaint was filed cannot be supported. It is provided by G. L. c. 59, § 68, that, "If, on hearing, the court finds that the complainant has complied with all the provisions of law and has paid the tax for which he has been assessed, it may grant him a reasonable abatement." There is nothing in these words fixing any date before which the tax must be paid, except that on the hearing it must be found to be paid. There is nothing in the history or the context of these statutory words to justify the construction that the tax must be paid before the proceeding can be instituted. Payment must be made before the abatement can be granted. That is the only requirement. *Commonwealth Investment Co.* v. *Brookline,* 268 Mass. 32. Proceedings for abatement before the county commissioners under G. L. c. 59, § 64, may be instituted before payment of the tax. *Milford* v. *County Commissioners,* 213 Mass. 162, 164. An appeal to the Superior Court for abatement under G. L. c. 59, § 65, is "subject to the same conditions" as are provided in § 64. Compare G. L. c. 59, § 68A, as amended by St. 1929, c. 212. If the General Court had intended that payment of the tax should be a prerequisite to filing the complaint, clear language to that end would have been used. The proceeding in *Bogigian* v. *Commissioner of Corporations & Taxation,* 248 Mass. 545, was brought under G. L. c. 62, § 47, whereby prepayment of the tax is required as a condition to filing the complaint. Nothing in that decision was intended

to intimate that similar prepayment was required under G. L. c. 59, §§ 65, 68.

Proceedings for abatement of taxes, although in the nature of an action at law, are prescribed throughout by the statute, and the rules as to procedure in actions at common law are not applicable. No process is required to be served in such complaint. *Cheney* v. *Dover,* 205 Mass. 501, 503. Cases like *Freeman* v. *Hedrington,* 204 Mass. 238, to the effect that the cause of action must have arisen in completeness before the suing out of the writ, are not controlling.

The taxes in question finally were paid in part by the purchaser of the property and in part by those to whom it was sold by the purchaser. This payment was adequate compliance with the provision of said § 68. It was an authorized payment in behalf of the complainant. It was made as a result of a previous agreement between the complainant and the purchaser. It would have been a vain ceremony for those, upon whom ultimately the contractual obligations to pay the taxes rested, to pass the money to the complainant to be handed by it to the collector of taxes. The payment was in execution of a contractual obligation to which the complainant was a party. It was made in substance at its request and for its benefit. The case at bar on this point is distinguishable from decisions like *Massachusetts Mutual Life Ins. Co.* v. *Green,* 185 Mass. 306.

The complainant returned a list of its property subject to taxation on April 1, 1927, as required by G. L. c. 59, § 61. In that list was included a detailed description and enumeration of all its machinery accompanied by a valuation. There was added to the list a statement that the " entire plant has not been operated since October, 1926, and due consideration should be given the fact that the machinery has not produced any material and has actually been of no value." The defendant urges that the complainant is thereby estopped now to contend that the machinery was not subject to taxation. It is manifest that the assessors of Lowell were not misled by the list.

It was accepted as true except as to valuation. No attack is now made on its verity. The transaction lacks essential elements of estoppel. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291. The authorities are to the effect that, in the circumstances here disclosed, the taxpayer is not barred by estoppel from showing the facts and appealing to correct principles of law. *Dunnell Manuf. Co.* v. *Pawtucket,* 7 Gray 277. *Charlestown* v. *County Commissioners,* 109 Mass. 270, 272. *Troy Cotton & Woolen Manufactory* v. *Fall River,* 167 Mass. 517, 520. *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491. *Welch* v. *Boston,* 211 Mass. 178, 186. The cases relied upon by the defendant like *Newburyport* v. *County Commissioners,* 12 Met. 211, 223, are not in conflict.

Question is raised as to the taxability of the machinery of the complainant as located and set up in its mill buildings on April 1, 1927. It is contended by the complainant that this machinery did not come within the descriptive terms of the statutes subjecting machinery to local taxation. By G. L. c. 59, § 18, Second, as amended by St. 1924, c. 321, § 2, "Machinery employed in any branch of manufacture . . . or, in the case of domestic business . . . corporations . . . machinery used in the conduct of their business, shall be assessed where . . . situated . . . ." The same statement in substance is found, in enumerating some exceptions to certain exemptions of property from local taxation, in G. L. c. 59, § 5, Sixteenth, as amended by St. 1926, c. 279, § 1, whereby there is exempted from local taxation specified property ". . . other than machinery used in manufacture . . . and other than machinery used in the conduct of the business, owned by domestic business corporations . . . ." The facts bearing upon the legality of the assessment of the machinery are these: The receivers were authorized to continue the operation of the business of the complainant to the extent of completing the manufacture of raw materials and stock in process and on hand and of selling finished goods. To that end they operated the business until October, 1926. A difference of opinion then arose touching the point

whether it would be better to continue operation or to close the plant. A petition to authorize further continuance of manufacture was denied by the court and the plant was finally closed in October, 1926. None of the machinery was used in any business or in the manufacture of any product subsequent to that month, so far as concerns the present case, and it was not being so used on April 1, 1927. Neither the complainant nor its receivers carried on any business after October, 1926, except that the receivers were trying to liquidate and turn all the assets of the complainant into cash. The purchasers carried on no business in the plant, but undertook as rapidly as possible to convert all the property including the machinery into money. There is no finding of fact that the plant had been dismantled on April 1, 1927. It had been used for many years for the manufacture of cotton cloth. There is no finding and there is nothing in the record to require a finding that the integrity of the plant as a manufacturing entity had been vitally impaired or affected. The machinery was in place. The machinery was installed in the buildings to carry out the purpose for which they were erected and to increase permanently their value for use and occupation. In some aspects it had become incorporated in and was a part of the real estate. *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519, 521, 522. Some machinery had been removed, whereby the capacity for production was diminished, but there was a balanced mechanical equipment susceptible to use to manufacture a large output. The property as a whole was as well adapted as it was in the preceding October for operation for the purpose for which it was designed. Manufacture had been suspended for less than six months prior to the tax date. That was due to financial embarrassment of the owner and depression in the cotton business. It was not due to the machinery. As a practical matter, the situation of the complainant was such as to render unlikely renewed operation of the plant by it. But it was not incapacitated in law from resuming such operation. Its charter powers do not appear to have

changed. There was no legal obstacle to the sale of the property. A purchaser might use it for the purpose for which it was designed. Radical and not unprecedented improvement in that branch of manufacture might bring about that result. There was nothing in the physical condition of the property to prevent the operation of the plant. It had not been dismantled. Its integrity had not been broken. It was in no essential particular disabled. It was ready for use.

The meaning of the governing statutory provision has not been much considered in our decisions. It was discussed in *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439, 444–449, but not with reference to the question here presented. It must be ascertained from its words, interpreted according to the common and approved usage of the language, regard being given to the nature of the property involved, to the practical administration of tax laws and to the operation of the statute as a workable piece of legislation. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 374. It seems manifest that the General Court could not have intended that a temporary suspension in the actual use of machinery subject to local taxation should operate to exempt it. Otherwise, such taxation could always be avoided by shutting down a manufacturing plant for a brief period covering the tax date. The words of the statute "employed in . . . manufacture" and "used in manufacture" are of broad signification and import a degree of permanence. *Sullivan* v. *Sheehan,* 173 Mass. 361, 364. *Roberts* v. *Lynn Ice Co.* 187 Mass. 402, 407. *Commonwealth* v. *Patterson,* 138 Mass. 498. *Commonwealth* v. *Osborn Mill,* 130 Mass. 33. *Commonwealth* v. *Riley,* 210 Mass. 387, 392. *Danovitz* v. *United States,* 281 U. S. 389, 396. They have acquired in tax statutes a comprehensive denotation and do not lend themselves to a narrow or technical construction. *Barker* v. *Watertown,* 137 Mass. 227. *Duxbury* v. *County Commissioners,* 172 Mass. 383. Of course, "manufacture" has limits to its meaning, as is shown by the cases reviewed in *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439, at pages 444,

445. But there can be no doubt that the machinery here assessed was adapted to be " used " and " employed " in " manufacture " and had been long thus " used " and " employed." Although the question is somewhat close, we are of opinion that, in view of all the facts narrated, the machinery came within the sweep of the governing statute on April 1, 1927, and was subject to assessment and taxation in Lowell on that date. Beyond doubt the machinery had been " used " and " employed " " in manufacture " by the complainant for a long period prior to October, 1926. The facts stated do not warrant the finding that subsequent to that month such use and employment had come to an end within the true intent and meaning of the statutory words. We have reached this conclusion having fully in mind and not departing from the general principle that all tax laws are to be strictly construed against the taxing power, cannot be extended by invoking their spirit, and, if open to doubt, must result in favor of the taxpayer. *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 530. *Cabot* v. *Commissioner of Corporations & Taxation,* 267 Mass. 338, 340. *City National Bank* v. *Charles Baker Co.* 180 Mass. 40, 41.

The result of the ruling that the complainant was not entitled to exemption from local taxation on its machinery was correct even though the reason given was unsound. A right decision will be supported although the reason stated for it is wrong. *Reilly* v. *Selectmen of Blackstone,* 266 Mass. 503, 512.

All the questions argued have been considered. No reversible error has been discovered.

> *Complainant's exceptions overruled.*
> *Defendant's exceptions overruled.*